1    James M. Hanavan, State Bar No. 66097
     Kristen E. Drake, State Bar No. 202827
2    CRAIGIE, McCARTHY & CLOW
     540 Pacific Avenue
3    San Francisco, CA 94133
     Telephone: (415) 732-7788
4    Facsimile: (415) 732-7783

5

6    Attorneys for Plaintiff Trevor Moss            **E-filing**

7                    IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                       SAN FRANCISCO DIVISION            **EDL**

10

11
     TREVOR MOSS,                          Case No.: **07    2732**
12
            Plaintiff,                     **COMPLAINT FOR:**
13
                                           1.  **Breach of Written Agreement Based**
14          v.                                 **Upon Failure to Pay Earned Bonus**

15   TIBERON MINERALS LTD.,                2.  **Violations of California Labor Code**
                                               **Sections 200** *et. seq.*
16          Defendant.

17                                         **JURY TRIAL REQUESTED**

18

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

---

Complaint for Breach of Contract

Plaintiff TREVOR MOSS (hereinafter "Plaintiff" or "Mr. Moss") hereby alleges the following:

## JURISDICTION AND VENUE

1.     Plaintiff is a citizen of the United States and a resident of the County of Sonoma, State of California. Plaintiff is a civil engineer, providing consulting engineering services from his place of business in Sonoma County, California.

2.     Mr. Moss is a Registered Engineer and holds an honors degree in civil and structural engineering from the University of Bradford, England and a master's degree in civil engineering from Arizona State University. Mr. Moss is an experienced executive with over twenty-five years in the mining industry, having worked extensively in development roles for some of the world's largest and successful mining operations and specialist consultants in Latin America, Europe, Asia Pacific and North America.

3.     Plaintiff is informed and believes, and on that basis alleges, that Defendant TIBERON MINERALS LTD. (hereinafter "TIBERON") is, and at all relevant times was, a Canadian corporation, conducting business internationally, with its principal place of business in Toronto, Ontario. Federal courts have jurisdiction over an action between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a) (2).

4.     Plaintiff provides engineering consulting services in the State of California. At the time he was approached by TIBERON to perform consulting services in connection with a mining project in Vietnam, plaintiff's consulting business was located in San Ramon, California. During the course of providing consulting services, Mr. Moss relocated his offices to Santa Rosa, California, where he presently resides.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

5.     Plaintiff is informed and believes, and on that basis alleges, that TIBERON is an exploration and development company with a 70% controlling interest in the Nui Phao tungsten/fluorspar project in Vietnam. TIBERON's objective is to become a dominant, low-cost, international producer of specialty application commodities. TIBERON anticipates becoming the world's largest primary tungsten producer and a major producer of acid-grade fluorspar, as well

2

Complaint for Breach of Contract

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 · Facsimile: 415/732-7783

1    as bismuth, copper and gold through development of its Nui Phao property in Vietnam.

2        6.    Prior to accepting the consulting position offered by TIBERON, Mr. Moss held

3    positions with Cyprus Amax Minerals, Barrick Gold, Aker Kvaerner and Gabriel Resources. He

4    has had comprehensive international experience in the areas of operations and project

5    development, risk assessment/mitigation, enterprise financial modeling, debt/equity project

6    financing, government relations and corporate social and environmental responsibility.

7        7.    Mr. Moss was solicited by TIBERON to provide consulting engineering services

8    in the spring and summer of 2005. In August of 2005, after lengthy negotiations, TIBERON

9    appointed Mr. Moss to the position of vice president, operations, although he continued to reside

10   and provide his consulting services from his California office. Mr. Moss was responsible for

11   consulting services in the development of TIBERON's Nui Phao tungsten-fluorspar property in

12   Vietnam which was scheduled to begin commercial production of these strategic commodities in

13   the first quarter of 2008.

14       8.    Mr. Moss's services included operations and project development, risk

15   assessment/mitigation, enterprise financial modeling, debt/equity project financing, government

16   relations and corporate social and environmental responsibility. A substantial portion of the

17   services were provided at plaintiff's California office, as well as in Australia, Vietnam and

18   elsewhere. A copy of plaintiff's Consulting Agreement is attached as Exhibit "A," while

19   TIBERON's Guarantee of the Consulting Agreement's payment obligations is attached as Exhibit

20   "B."

21       9.    As set forth in the Consulting Agreement, notices were to be given to Mr. Moss at

22   his California address, and payments were made to him at that address. Effective August 31,

23   2006, in accordance with numbered Section 5(b)(i) of the Consulting Agreement, entitled

24   "Termination Without Cause," the consulting relationship ended. Section 5(b)(i) of the

25   Consulting Agreement provides, in pertinent part, that Mr. Moss shall be paid on the date that the

26   Agreement is terminated "all his accrued but as yet unpaid consulting fees, reimbursable

27   expenses, accrued but as yet unused vacation and his annual bonus for the year in which the

28   termination occurs, to the extent earned based on performance for the year to date, in an amount

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 · Facsimile: 415/732-7783

3

1  pro rated proportionate to that portion of the year completed as of the effective date of
2  termination."

### FIRST CAUSE OF ACTION

### Breach of Written Agreement

5      10.    The allegations contained in paragraphs 1 through 9, inclusive, are realleged in full
6  and incorporated herein by reference.

7      11.    Although the Consulting Agreement between Nui Phao Mining Joint Venture
8  Company Ltd. and Mr. Moss, guaranteed under a separate Guarantee of even date by TIBERON,
9  and in particular Section 2(a), provides that Mr. Moss shall receive a bonus based upon his
10  achievement of designated annual objectives, TIBERON failed and refused to make such bonus
11  payment or any part thereof "on the date that the Agreement [was] terminated" as agreed.  The
12  bonus amount, pro rated to reflect the portion of the fiscal year during which he was employed,
13  was to be paid to him pursuant to Section 5(b)(i) of the Consulting Agreement if, as was the case,
14  his employment should be terminated without cause before completion of the year.

15      12.    Pursuant to Section 2(a) of the Consulting Agreement, drafted by TIBERON as
16  Nui Phao Mining Joint Venture Company Ltd.'s managing partner and 70% owner, Mr. Moss
17  was to receive a bonus based upon his achievement of designated annual objectives, "mutually
18  agreed upon each year by the parties … within eight (8) weeks after the [start of each calendar
19  year]."  Although the TIBERON drafted provision states that the "calendar year" bonus shall be a
20  percentage of Mr. "Moss's prior twelve (12) month consulting fee with a target of 40% as a
21  bonus," the parties understood that the 40% figure was a minimum, as evidenced by the fact that
22  plaintiff was paid a 40% bonus for calendar year 2005 despite the parties' failure to designate any
23  "annual objectives" for the period in question and Mr. Moss was told that the minimum figure
24  was selected as there was no designated annual objectives supporting a higher amount.

25      13.    In accordance with Section 2(a) of the Consulting Agreement, the parties
26  designated annual objectives for calendar year 2006, all of which were either achieved by Mr.
27  Moss or excused from performance due to impossibility.  Notwithstanding performance by Mr.
28  Moss, no bonus was paid "on the date that the Agreement [was] terminated", or at all.  A true and

4

1   correct copy of the notification sent to Mr. Moss by TIBERON on or about February 19, 2007,

2   advising that no bonus would be paid, notwithstanding the parties' agreement, is attached as

3   Exhibit "C."

4       14.    Every contract imposes upon each party a duty of good faith and fair dealing in the

5   performance of the contract such that neither party shall do anything which will have the effect of

6   destroying or injuring the right of the other party to receive the fruits of the contract. The

7   covenant of good faith finds particular application in situations where one party is invested with a

8   discretionary power affecting the rights of another. Such power must be exercised in good faith.

9       15.    As an actual and proximate result of TIBERON's failure to honor its agreement,

10   plaintiff has suffered a severe loss of income, in a sum to be determined according to proof at

11   time of trial, but in excess of the jurisdictional minimum of this Court.

**SECOND CAUSE OF ACTION**

**Failure to Pay Earned Bonus**

16.    The allegations contained in paragraphs 1 through 15, inclusive, are realleged in full and incorporated herein by reference.

17.    In August of 2005, TIBERON appointed Mr. Moss to the position of vice president, operations. Effective August 31, 2006, in accordance with numbered Section 5(b)(i) of the Consulting Agreement, entitled "Termination Without Cause," the consulting relationship ended. Plaintiff is presently owed his bonus by TIBERON as a result of the Consulting Agreement and Guarantee.

18.    Plaintiff has not received payment of the bonus he earned, although the amount is substantial. TIBERON's failure to pay the full amount due to plaintiff upon his termination and its delay in providing Plaintiff with payment of his bonus violates the provisions of Cal. Labor Code sections 200 *et seq.* Plaintiff alleges that there is now due and owing to plaintiff payment of the bonus, plus interest and penalties. TIBERON has failed and refused, and continues to fail and refuse, to pay the amount due.

19.    Pursuant to Cal. Labor Code section 203 and other provisions of California law, plaintiff requests that this Court award him penalties. Pursuant to Cal. Labor Code section 218.5

CRAIGIE, McCARTHY & CLOW<br/>Telephone: 415/732-7788 · Facsimile: 415/732-7783

5

1    and other provisions of California law, plaintiff requests that this Court award him reasonable

2    attorneys' fees and costs incurred by him in bringing this cause of action.

3        20.    Pursuant to Cal. Labor Code section 218.6 and other provisions of California law,

4    plaintiff requests that this Court award plaintiff interest on his due and unpaid bonus, at the legal

5    rate specified by Cal. Civil Code section 3289(b), accruing from the date the bonus was due and

6    payable.

7    **PRAYER FOR RELIEF**

8        WHEREFORE, Plaintiff prays for judgment against Defendant TIBERON as follows:

9        1.    Damages in an amount to be proven at trial, an amount which exceeds this Court's

10   jurisdictional minimum;

11       2.    Costs of suit incurred herein;

12       3.    Attorneys' fees pursuant to contract and statute;

13       4.    Interest and penalties on the earned bonus due plaintiff; and,

14       5.    Any and all other relief as this Court deems just and proper.

15

16   Dated: May 23, 2007                    CRAIGIE, McCARTHY & CLOW

17

18

19                                   By: James M. Hanavan

20                                   Attorneys for Plaintiff Trevor Moss

21   **REQUEST FOR JURY TRIAL**

22       Plaintiff TREVOR MOSS hereby requests a jury trial.

23

24   Dated: May 23, 2007                    CRAIGIE, McCARTHY & CLOW

25

26

27                                   By: James M. Hanavan

28                                   Attorneys for Plaintiff Trevor Moss

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 · Facsimile: 415/732-7783

Complaint for Breach of Contract

**EXHIBIT A**

## CONSULTING AGREEMENT

THIS AGREEMENT made as of the 1st day of August, 2005 (the "Effective Date").

BETWEEN:

> Nui Phao Mining Joint Venture Company
> Ltd. ("Nuiphaovica" or the "Company")
> c/o Tiberon Minerals Ltd. ("Tiberon")
> 330 Bay Street, Suite 505
> Toronto, Ontario M5H 2S8
> Canada

AND

> Trevor Moss
> 6098 Lakeview Circle
> San Ramon, CA 94582
> USA

> (hereinafter called "Moss" or the "Consultant")

WHEREAS the Company, a Vietnamese corporation, has agreed to employ Moss and the Company and Moss are desirous of setting forth the terms and conditions thereof;

The Company and Moss hereby covenant and agree, each with the other, as follows:

### 1.   Engagement

The Company hereby agrees to employ Moss as Vice President Operations and Moss hereby agrees to provide consulting services to the Company on the terms and conditions set forth in this Agreement. Moss' employment shall commence on the Effective Date and continue for an indefinite term until terminated in accordance with the terms of this Agreement.   It is acknowledged that Moss is being retained by the Company as a full time consultant for the Company.

### 2.   Remuneration

    (a)    Moss shall be paid, for his consulting services hereunder including service as an officer of Tiberon, and other duties, at the annual rate of US $250,000.   This amount will be paid in equal installments monthly within five (5) days after receipt of invoices submitted. Any and all Vietnamese and Canadian tax liability under this Agreement will be paid by the Company.

    (b)    Moss shall participate in the formal bonus plan adopted by the Company.   The bonus to Moss is based on predetermined annual objectives mutually agreed upon each year by the parties, for the period through 2006, within eight (8) weeks after the Effective Date, and thereafter within eight (8) weeks after the start of each calendar year, and shall be set at a target of 0 to 75% of Moss's prior twelve (12)

2

month consulting fee with a target of 40% as a bonus. Determination of whether the annual objectives have been satisfied shall be made by the Compensation Committee, to be ratified by the Board of Directors.

(c)     Moss shall participate in Tiberon's stock option plan and the Company shall cause Tiberon to grant to Moss an initial option thereunder to purchase 200,000 common shares of Tiberon exercisable at the market price of Tiberon's common shares as at the close of trading on the day preceding the date of grant. The option shall be granted no later than August 31, 2005 and shall provide for vesting from the Effective Date at the rate of 33-1/3% per year, and otherwise be in accordance with Tiberon's stock option plan.

(d)     As an officer of the Company and Tiberon, the Consultant will be covered under the existing directors and officers' liability insurance of Tiberon and the Company, which provides for a minimum coverage of Can $2,000,000.

(e)     Evacuation coverage and medical coverage outside the USA will be provided by the Company at no cost to the Consultant.

## 3.    Expenses

The Company shall reimburse Moss at least monthly for all reasonable travel, entertainment and other expenses incurred in his performance of the Services and other duties under this Agreement. Travel will be in accordance with the travel policy of the Company, a copy of which has heretofore been furnished to Moss by the Company. As required to perform the duties under this Agreement, the Company will provide, at no cost to the Consultant and for the necessary periods, suitable executive quality accommodations while he is on assignment in Toronto, Vietnam and other locations, and while stationed in Vietnam, the Consultant will be provided with suitable transportation.

## 4.    Vacations

Moss shall be entitled to four (4) weeks' vacation in each calendar year and be paid his normal consulting fee during such periods of vacation.

## 5.    Termination of Contract

(a)     *By the Consultant*

**Resignation** - Moss may at any time during the term of this Agreement give written notice to the Company that his consulting services hereunder shall terminate sixty (60) days after the date of such notice. The 60-day advance notice period may be waived by the Company in whole or in part. Whether or not such notice is waived, Moss shall be paid all consulting fees, bonuses and unused vacation accrued through the end of the notice period and shall not be entitled to any further payments following the 60-day period.

3

(b)   **By the Company**

   (i)    **Termination Without Cause** - The Company may, without cause, at any time during the term of this Agreement, terminate this Agreement by giving written notice to Moss, and on the date that the Agreement is terminated pay to Moss all his accrued but as yet unpaid consulting fees, reimbursable expenses, accrued but as yet unused vacation and his annual bonus for the year in which the termination occurs, to the extent earned based on performance for the year to date, in an amount pro rated proportionate to that portion of the year completed as of the effective date of termination. In addition, the Company shall pay to Moss on the date of termination a lump sum equal to twelve (12) times the monthly consulting fee payable hereunder, as and for severance, with no duty to mitigate damages.

   (ii)   **Termination for Cause** - This Agreement may be terminated by the Company for Cause upon one (1) day's written notice to Moss. In such event, Moss shall immediately cease rendering services under this Agreement upon receipt of such notice.   "Cause" as used in this Agreement means (a) a material and wilful breach of the provisions of this Agreement which has not been cured within ten (10) days of written notice of such breach, (b) a conviction or a plea of guilty by Moss to a criminal act involving fraud or dishonesty, or (c) misappropriation or theft of any of Tiberon's or the Company's property or assets.

6.   **Termination Rights as a Result of Change of Control**

   (a)   **Definitions**

   For purposes of this Section 6:

   "Change of Control" means:

   (i)    Where a Person or a group of Persons (in each case other than Ian Gowrie Smith or a Person controlled directly or indirectly by Ian Gowrie Smith) acting jointly or in concert acquires ownership or control of 30% or more of the outstanding shares of the Company or Tiberon carrying voting rights for the election of the board of directors of the Company or Tiberon, whether acquired in a single transaction or a series of transactions;

   (ii)   The sale, lease or transfer of all or substantially all of the Company's or Tiberon's assets to any other Person or Persons; or

   (iii)  the entering into of a merger, amalgamation, arrangement or other reorganization by the Company or Tiberon with another Person that is not, prior to the merger, amalgamation, arrangement or reorganization, an affiliate (as defined for the purposes of the *Canada Business Corporations Act*) of the Company or of Tiberon.

2909193_2 DOC

4

"Person" includes an individual, a partnership, a corporation and any other incorporated or unincorporated entity or association.

"Termination Date" means the date that this Agreement is terminated by the Company after a Change of Control or that Moss elects to terminate this Agreement pursuant to Section 6(b) of this Agreement.

(b)    **Termination on Change of Control**

If a Change of Control occurs at any time during the term of this Agreement then Moss shall have the right, exercisable at any time within six (6) months thereafter, to terminate this Agreement upon providing five (5) days notice to the Company. If Moss terminates this Agreement pursuant to this Section 6(b), or if within six (6) months following the Change of Control, this Agreement is terminated by the Company for any reason, then the Company shall pay to Moss on the Termination Date all his accrued but as yet unpaid consulting fees, reimbursable expenses, accrued but as yet unused vacation and his annual bonus for the year in which the termination occurs, to the extent earned based on performance for the year to date, in an amount pro rated proportionate to that portion of the year completed as of the effective date of termination. In addition, on the Termination Date, the Company shall pay to Moss, as and for severance, a lump sum payment equal to twelve (12) times the monthly consulting fee payable hereunder, with no duty to mitigate damages.

## 7.    Visas and Authorizations

The Company shall assist the Consultant to obtain all necessary visas and other authorizations necessary to ensure that the Consultant can perform under this agreement.

## 8.    Release

In consideration of the payments described in Sections 5(a), 5(b)(i) or 6(b), Moss shall resign as an officer of the Company and shall forever release and discharge the Company and Tiberon from any and all obligations to pay any further amounts to Moss with respect to this Agreement and the Guarantee, and in respect of acting as an officer of the Company and Tiberon, except those amounts that remain payable pursuant to the terms of this Agreement or the Guarantee.

## 9.    Confidentiality

(a)    The Consultant acknowledges that, prior to the Effective Date he has and thereafter during the term of this Agreement he may, from time to time, become privy to confidential or proprietary information of the Company and/or Tiberon (the "Protected Information"), including trade secrets and confidential or proprietary information, knowledge, documents or materials owned, developed or possessed by the Company and/or Tiberon, whether in tangible or intangible form, which is not publicly disseminated information. Protected Information includes, but is not limited to, information, data, records, notes, reports, drill hole

2909193_2 DOC

5

logs, calculations, opinions, maps, charts, drawings, sketches, plans, documents, applications, reports, studies and other information in written, oral or electronic form and whether or not noted thereon to be confidential pertaining to the Nui Phao property or any other properties held by the Company and/or Tiberon, financial information or measures, financial results, business methods, future business plans, data bases, matters of a technical nature, including know-how, data, formulae, secret processes and designs, models, operating procedures, knowledge of the organization, and other information of any nature whatsoever owned, developed or possessed by the Company and/or Tiberon. The Consultant hereby agrees to hold all Protected Information in confidence both during the term of this Agreement and afterwards for a period not to exceed twelve (12) months. The Consultant also agrees that he will not, except as required in the conduct of the business of the Company and/or Tiberon, as otherwise required by law, publish, disclose or make use of any of the Protected Information. The foregoing covenant regarding Protected Information shall be effective during and after the term of this Agreement. Protected Information shall not include any information that (i) was in the possession of or known to the Consultant, without any obligation to keep it confidential, before it was disclosed to the Consultant by the Company and/or Tiberon or through the Consultant's involvement with the Company and/or Tiberon; (ii) is or becomes public knowledge through no fault of the Consultant; (iii) is disclosed by the Company and/or Tiberon to another person without any express restriction on its use or disclosure; or (iv) is or becomes available to the Consultant from a source other than the Company and/or Tiberon, which source, to the best of the Consultant's knowledge, is legally permitted to disclose such information and is not under confidentiality restrictions.

## 10.    Notice

Any notice in writing required to or permitted to be given by either party hereunder shall be sufficiently given if delivered to the other party personally and concurrently by electronic mail addressed to:

the Company or Tiberon at:

Tiberon Minerals Ltd.
330 Bay Street Suite 505
Toronto, Ontario M5H 2S8
Canada
Attention: President & CEO
Electronic mail: mario@tiberon.com

or to the Consultant at:

6098 Lakeview Circle
San Ramon, CA 94582
USA
Electronic mail: trevor.moss@attglobal.net

2909193_2 DOC

6

Any such notice so received before 3:00 p.m. on any business day shall be deemed to have been delivered on that day. Any notices received after that time on a business day or on a day that is not a business day shall be deemed received on the next following business day. In this Agreement, "business day" means a day that is not a Saturday, Sunday or statutory holiday in Toronto, Ontario. All times shall be Eastern Standard Time (EST) as it applies to Canada and the USA. Any address for the giving of notices hereunder may be changed by notice in writing to the other party.

**11.    Governing Law**

The provisions of this Agreement shall be governed by, interpreted, and enforced in accordance with the laws in force in the Province of Ontario.

**12.    Guarantee**

The obligations of the Company hereunder shall be unconditionally guaranteed by Tiberon pursuant to the terms of a separate Guarantee, to be executed by Tiberon concurrently with this Agreement.

**13.    Survival**

This Agreement shall extend and enure to the benefit of the successors and assigns of each of the parties.

**14.    Costs of Enforcement**

If either party breaches any provision of this Agreement or defaults in the performance of any of its or his duties or obligations hereunder, the other party shall be entitled to his or its costs of enforcement, including court costs and reasonable attorneys' and experts' fees and expenses, through enforcement of any judgment.

**15.    Entire Agreement**

Except as stated in this Agreement, there are no agreements, understandings or statements, verbal or written, relating to the subject matter of this Agreement other than the Option Agreement and the Guarantee. No modification, waiver, amendment or replacement of this Agreement shall be effective unless made in writing and signed by Moss and the Company.

This Agreement has been entered into as of the date first above written.

NUI/PHAO MINING JOINT VENTURE
COMPANY LTD

Per:

Per:

TREVOR MOSS

2909193_2.DOC

**EXHIBIT  B**

## GUARANTEE

THIS GUARANTEE (the "Guarantee") is executed as of August 1, 2005 by TIBERON MINERALS LTD., an Ontario corporation ("Guarantor"), in favor of TREVOR MOSS, a resident of the State of California ("Mr. Moss").

This Guarantee is to provide a guarantee on the part of Guarantor of the obligations (the "Obligations") of Nui Phao Mining Joint Venture Company Ltd., a Vietnamese corporation of which Guarantor is a principal owner (the "Company") under a certain Consulting Agreement being executed concurrently with this Guarantee, under which Mr. Moss is to serve as the Company's Vice President Operations and to perform consulting services on its behalf (the "Consulting Agreement").

Guarantor hereby guarantees (unless relieved by the decision of a tribunal of competent jurisdiction) the prompt performance when and as due of all Obligations to Mr. Moss and his executors, personal representatives, successors and assigns in the event that the Company fails to perform any Obligations when and as due.

A separate action may be brought or prosecuted against Guarantor regardless of whether the action is brought or prosecuted against the Company or whether the Company is joined in the action. If the Company fails to perform any of the Obligations when and as due, Mr. Moss may proceed against the Company or Guarantor, or both of them, or Mr. Moss may enforce against the Company or Guarantor, or both of them, any rights that Mr. Moss has under the Consulting Agreement or pursuant to this Guarantee.

Guarantor hereby waives demand of payment, presentment, protest and notice of dishonor or non-payment.

Guarantor hereby consents and agrees that, without notice to or further assent from Guarantor, the time of performance of all or any of the Obligations may be extended, changed or modified, the parties thereto discharged and any composition or settlement consummated and accepted, and that Guarantor will remain bound by this Guarantee notwithstanding one or more such extensions, changes, modifications, discharges, releases, compositions or settlements. Guarantor further consents and agrees that this Guarantee shall not be impaired or otherwise affected by any failure to exercise, delay in the exercise, exercise or waiver of, or forbearance or other indulgence with respect to, any right or remedy available to Mr. Moss.

The liability of Guarantor under this Guarantee shall be direct, immediate, absolute, continuing, unconditional and not conditioned or contingent upon Mr. Moss's pursuing whatever remedies he may have against the Company or its successors or assigns.

If any payment of monies under the Consulting Agreement is made by or for the benefit of the Company and is repaid by Mr. Moss to the Company or any other party pursuant to any federal, state or other law, including but not limited to those relating to bankruptcy, insolvency, preference or fraudulent transfer, then to the extent of such repayment, the liability of Guarantor with respect to such Obligations shall continue in full force and effect. Guarantor agrees that if Mr. Moss or any of his successors or assigns give to Guarantor written notice of the institution of

2

any action or proceeding, legal or otherwise, between Mr. Moss and the Company, Guarantor shall be conclusively bound by the adjudication in any such legal or other proceeding, or by any judgment or award decree entered therein.

The liability and obligations of Guarantor may not be assigned or otherwise transferred to any other person or entity, and no such purported assignment or transfer shall serve to relieve Guarantor from its liability or obligations hereunder. Notwithstanding the foregoing, the liability and obligations of Guarantor hereunder shall be binding upon it and each of its successors and assigns. This Guarantee shall be governed by and construed and interpreted in accordance with the laws of the Province of Ontario without regard to conflicts of laws principles. This Guarantee cannot be altered or discharged orally. Notice of the acceptance of this Guarantee is hereby waived. In the event of any litigation to enforce the terms of this Guarantee, the prevailing party or parties shall be entitled to his or its attorneys' fees and costs of suit.

IN WITNESS WHEREOF, Guarantor has executed and delivered this Guarantee, effective as of the first date set forth above.

TIBERON MINERALS LTD.

By _____

Its: President CEO

**EXHIBIT C**



Tiberon Minerals Ltd.
100 Yonge Street, Suite 1101
Scotia Plaza
Toronto, Ontario M5C 2W1
Tel     416-214-1877
Toll    866-616-2404
Fax    416-214-0091
Email  info@tiberon.com

February 19, 2007

Mr. Trevor Moss
3645 Crown Hill Drive
Santa Rosa, California  95404
USA

Dear Trevor

As you are aware, a meeting of the Compensation Committee was held in Toronto this past week at which your bonus was discussed.  The Committee had the benefit of reviewing all relevant documentation and correspondence on the matter of a bonus, including all of the matters raised by you in your submissions in that regard.  After due consideration, the Committee determined that you are not eligible for a bonus under the terms of your arrangement with the Company.  Subsequently, that decision was received by the Board of Directors and they determined to take no action to approve a bonus.  The granting of a bonus is at the discretion of the Board of Directors of the Company and in the circumstances their determination is final.

Yours truly,

TIBERON MINERALS LTD.

by

Mario Caron
President and CEO

3954305_1.DOC