

DAVID J. BROWN (State Bar No. 56628)
MBV LAW LLP
855 Front Street
San Francisco, California 94111
Telephone: 415-781-4400
Facsimile: 415-989-5143

Attorneys for Defendant
TIBERON MINERALS LTD.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TREVOR MOSS,

Plaintiff,

v.

TIBERON MINERALS LTD.,

Defendant.

CASE NO. C 07 2732 SC

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FORUM NON-CONVENIENS**

Date: October 26, 2007
Time: 10:00 a.m.
Dept.: Courtroom 1, 17th Floor
Judge: Hon. Samuel Conti

# TABLE OF CONTENTS


**INTRODUCTION** ..... 1

A. Moss Wants the Bonus Benchmarks Mutually Agreed Upon Between Him and the Company to Be Ignored or Nullified Because He Did Not Meet or Exceed Them, Yet Still Wants a Bonus..... 1

B. Moss Plays Fast and Loose With His Arguments and Facts..... 1

**ARGUMENT** ..... 2

A. The Relevant Considerations..... 2

B. Toronto Is and Adequate Alternative Forum. ..... 3

C. Toronto Has A Significant Number of Witnesses In or Close To It; Many More Than the Those the Northern District of California. ..... 3

D. The Canadian Witnesses Can Be Compelled to Attend a Trial in Toronto. ..... 5

E. Significant Hardship Will Occur if Tiberon Has to Defend the Case in California..... 6

F. The Cost of Bringing Willing Witnesses to the Place of Trial Does Not Tip the Balance Greatly, One Way or The Other, Except the Cost of Bringing the Toronto Witnesses to California Far Exceeds The Cost of Bringing the Two California Witnesses to Toronto. ..... 6

G. The Historical Books, Papers and Records of Tiberon Are In Storage in Toronto..... 6

H. That Moss Is a Northern District of California Resident Does Not Translate Into A Veto of Dismissal for *Forum Non Conveniens*. ..... 6

I. Moss Agreed That Canadian Law Governed His Relationship with Tiberon and the Joint Venture; He Should Not Be Allowed To Avoid Canadian Law While Trying to Assert Bonus Rights Under Those Same Contracts. ..... 7

J. The Fallacious Interpretation of the Buy-out Agreement Argument. ..... 7

**CONCLUSION** ..... 7


MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

# TABLE OF AUTHORITIES

## Cases

*Cheng v. Boeing Co.* 510 178 F.2d 1406 (9Cir. 1983) .......... 2

*Contact Lumber Company v. P.T. Moges Shipping Company, Ltd.*, 918 F.2d 1446, 1449 (9th Cir. 1990) .......... 6

## Other Authorities

*Peoples Department Stores Inc. (Trustee of) v. Wise*, [2004] 3 S.C.R. 461, 2004 SCC 68 .......... 5

## Rules

Rule 53 of the Canadian Rules of Civil Procedure .......... 5

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

## INTRODUCTION

Trevor Moss's ("Moss") barrage response to Tiberon's motion constitutes a combination of materials that ignore (1) most of the substantive and practical issues in the case and, (2) the case management implications of those issues with respect to the private and public factors to be considered in determining that Tiberon has more than enough tilted the scale to validate dismissal under the *forum non conveniens* doctrine.

Although opposing Tiberon's Motion to Dismiss for *forum non conveniens* is not the correct time and place to argue his case, Moss uses his opposition to forward his theme that he worked sufficiently hard and well to justify a bonus even if the bonus benchmarks he had to reach were not met. For example, in his witness list he describes many of his purported witnesses as being able to testify as to what he did but those descriptions do not assert that they would testify about whether or not he met the contractually mandated benchmarks.

### A. Moss Wants the Bonus Benchmarks Mutually Agreed Upon Between Him and the Company to Be Ignored or Nullified Because He Did Not Meet or Exceed Them, Yet Still Wants a Bonus.

At the same time, he strongly argues that there is no need for Tiberon Compensation Committee members and Board of Director testimony, even though under the Moss's contract they were the persons who would determine to what, if any, bonus he was entitled. He seems to claim that why these persons did not give him a bonus is not relevant to his claim for one. That just cannot be correct. He and his attorney in the Hanavan Declaration argue and unsuccessfully attempt to demonstrate that those Compensation Committee members and Board members in Toronto (and elsewhere) were not around when the "no bonus" decision was made. He is wrong, they were around.[1]

### B. Moss Plays Fast and Loose With His Arguments and Facts.

The major ways that Moss plays fast and loose with the facts include:

- He ignores or discounts specific contract provisions in the agreement upon which

---

[1] The detail about and support for Tiberon's position on this point is set forth below. The text of the Hanavan declaration on this point is not supported in the exhibits attached to the declaration. Tiberon has filed concurrently with this pleading, its objections to Moss's declaration.

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

he bases his bonus claim:

- First, he asks this Court to disregard the Canadian choice of law provision in the "highly negotiated" contract upon which he sues.
- Then, he asks this Court to pay no heed to the specific bonus provision of his "highly negotiated" contract which specifies that Tiberon's Compensation Committee and Board of Directors have the power and discretion to make bonus decisions based on whether or not Mr. Moss met bonus goals, mutually agreed upon by Moss and the Company.

- He both directly and impliedly takes the position that the Compensation Committee members' and Board of Directors' geographic locations should not be considered in evaluation of this motion because in his opinion they are not fully qualified to make a valid assessment of his performance. Since he contractually agreed to have them make that assessment, he is contractually estopped from claiming that their testimony about their decision has no bearing on the case.
- He overly relies upon and asserts that his status of a United States citizen, domiciled in the Northern District of California, requires this Court to deny Tiberon's motion. While the case law may give an edge to a plaintiff in the plaintiff's forum selection, it is more than clear that the edge can be overcome and has often been overcome.
- He fills the record with numerous self-serving statements about his qualifications and accomplishments, which likely are not relevant to the underlying case, but clearly are not relevant to a *forum non conveniens* analysis.

We discuss these points in detail, and a few others, in reply to Moss's opposition.

## ARGUMENT

### A. The Relevant Considerations.

Case law cited by both sides specify the following factors to be considered (where applicable) by the Court in balancing the competing public and private interests relevant to a *forum non conveniens* assessment. *See, e.g., Cheng v. Boeing Co.* 510 178 F.2d 1406

(9 Cir. 1983).

- Is there an adequate alternative forum.
- Private interest factors affecting the convenience of the litigants:
  - Relative ease of access to sources of proof
  - Availability of compulsory process for attendance of the unwilling
  - Cost of obtaining attendance of willing witnesses
  - Possibility of view of premises, if view would be appropriate to the action
  - All other practical problems that make trial of the case easy, expeditious and inexpensive
- Public interest factors affecting the convenience of the forum:
  - Administrative difficulties flowing from court congestion
  - The local interest in having localized controversies resolved at home
  - The interest in having trial of a diversity case in a forum that is familiar with the law that must govern the action
  - The avoidance of unnecessary problems in conflicts of law, or in the application of foreign law
  - The unfairness of burdening citizens in an unrelated forum with jury duty

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

## B. Toronto Is and Adequate Alternative Forum.

Moss does not appear to challenge Tiberon's assertion that the Canadian courts in Toronto are adequate forums. As a condition of a granting of its motion, Tiberon agrees that it will submit to the jurisdiction of a Canadian court in Toronto (it also is willing to submit to the jurisdiction of courts in Vancouver, British Columbia or Vietnam, if the plaintiff prefers). Tiberon would waive any statute of limitations that would establish a bar of this action in Toronto because of the passage of time while this case has been in this Court. In effect Tiberon will agree to a toll of the statute.

## C. Toronto Has A Significant Number of Witnesses In or Close To It; Many More Than the Those the Northern District of California.

Tiberon's moving papers show 7 Canadian witnesses with 4 of them in or near Toronto.

Since Tiberon filed its motion, it has identified an additional witness in Toronto, Sonya Stark. Paragraph 4 of the Declaration of Steven J. Cresswell filed concurrently with this memorandum. That means there are eight Canadian witnesses with 5 of them being in or near Toronto.

Moss in his moving papers says there is one other California domiciled witness in addition to himself. One could argue she is not really a viable witness to the issues at hand. However, even if she is, that means there are only two California witnesses. Other than in Canada, most of the other potential witnesses identified by one or both parties are in Southeast Asia or the South Pacific. While technically, San Francisco may be somewhat closer to them than Toronto, the difference is not significant in these days of air travel, with the relative ease of travel, and cost of travel, to either San Francisco or Toronto not really being very different.

To bolster his argument that the Toronto witnesses are not really germane, Moss says that because the company was sold and those folks are no longer with it, their testimony is not needed. He also speculates and wrongfully concludes that those Toronto witnesses did not participate in, or witness, the "no bonus to Moss" decision. He has no admissible proof of that, and he is wrong. Mr. Hanavan's declaration that asserts that those witness left the Company prior to the bonus decision being made is incorrect.[2] A brief chronology demonstrates that point.[3]

December 22, 2006 – Compensation Committee consisting of Richard Lister and Clifford Davis met to consider Moss's bonus – Mario Caron was present.

February 15, 2007 – Compensation Committee (same members as in December) met further to consider Moss's bonus and concluded that he should receive no bonus because he had not satisfied his bonus goals. Prior to the meeting the Committee members had

---

[2] For two reasons. The exhibits to Hanavan's declaration do not support his statements in his declaration and his claim is directly refuted by Tiberon's March 29, 2007 Annual Information Public Filing (which can be found at www.seder.com), and an extract of which attached as Exhibit B to Tiberon's Supplemental Authorities, filed concurrently herewith. The Filing shows the indicated people as being on the Compensation Committee and Board of Directors as indicated.

[3] These facts come from the Cresswell Declaration filed concurrently herewith at ¶¶ 2 and 3, and from Exhibit G to the Moss Declaration.

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

received the exchange of correspondence between Moss and Caron attached as Exhibits A-G to Moss's Declaration in Opposition to the pending motion – Mario Caron, Sonya Stark and John Shrimpton were present.

Prior to February 19, 2007 – Tiberon's Board of Directors accepted and ratified the no bonus decision.

February 19, 2007 – Mario Caron communicated the no bonus decision to Moss.

On and after February 19, 2007 – Members of the Compensation Committee and the Tiberon Board of Directors left their respective positions with Tiberon as the buyout was implemented and new management was put into place.

The "no bonus for Moss" decision was in large part, made or witnessed by the Toronto based witnesses and it is hard to imagine how their testimony on the decision would not be relevant to the issue of whether Mr. Moss achieved his contractually mandated bonus objectives, and whether the business judgment rule protects that "no bonus for Moss" decision. [4] Additionally, with respect to Moss's California Labor Code § 203 claim, whether the non-payment actions were willful or based on a reasonable belief that payment was not due is an important issue to which the Toronto witness would testify.

**D. The Canadian Witnesses Can Be Compelled to Attend a Trial in Toronto.**

Canadian law permits a Toronto court to cause a person in Toronto to be compelled to attend a trial in Toronto. Rule 53 of the Canadian Rules of Civil Procedure. Furthermore, a person in British Columbia can be compelled to attend a trial in Toronto. *See,* Subpoena (Interprovincial) Act [RSBC 19961 Chapter 442], and Interprovincial Summonses Act [R.S.O. 1990, CHAPTER 1.12], copies of which are attached to Tiberon's Supplemental Authorities as Exhibits C and D.

---

[4] Canada has a business judgment rule, *see, e.g., Peoples Department Stores Inc. (Trustee of) v. Wise*, [2004] 3 S.C.R. 461, 2004 SCC 68 [a copy is attached as Exhibit A to Tiberon's Supplemental Authorities, filed concurrently herewith]. Because of the Canadian choice of law provisions in the contracts and the fact that Tiberon was a Canadian entity, the details and application of the businss judgment rule are best and appropriately left to Canadian courts.

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

**E. Significant Hardship Will Occur if Tiberon Has to Defend the Case in California.**

Tiberon has no operations or activities in California, and as Moss notes, has shifted most of its current operations to Viet Nam. Having to bring documents and witnesses from Toronto, Viet Nam and elsewhere to California is a significant hardship. While a trial of the case in Toronto would also cause some pain, the documents are in Toronto and many witnesses are in Toronto. The hardship is reduced, and the attendance of those witnesses can be assured in Toronto. That is not true in California.

**F. The Cost of Bringing Willing Witnesses to the Place of Trial Does Not Tip the Balance Greatly, One Way or The Other, Except the Cost of Bringing the Toronto Witnesses to California Far Exceeds The Cost of Bringing the Two California Witnesses to Toronto.**

No matter how one cuts it, it would cost much more to bring the Toronto witness group to California, than it would cost to bring two California witnesses to Toronto. The other witnesses identified by both sides (with significant overlap) appear to be a toss-up in terms of bringing them to San Francisco or Toronto.

**G. The Historical Books, Papers and Records of Tiberon Are In Storage in Toronto.**

Although current operations are in Viet Nam, the historical records of Tiberon are in storage in Toronto. *See,* Cresswell Declaration at ¶ 5. That makes them convenient to the parties and a Toronto Court.

**H. That Moss Is a Northern District of California Resident Does Not Translate Into A Veto of Dismissal for *Forum Non Conveniens*.**

"The presence of American plaintiffs, however, is not in and of itself sufficient to bar a district court from dismissing a case on the ground of *forum non conveniens.* [citations omitted]" *Contact Lumber Company v. P.T. Moges Shipping Company, Ltd.,* 918 F.2d 1446, 1449 (9th Cir. 1990). Here the centers of gravity of this case are in Toronto and Viet Nam. The scale tips more toward Toronto because of the Canadian choice of law provision (discussed in detail in Tiberon's

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

moving papers) in the governing contracts upon which Moss bases his claims.

**I. Moss Agreed That Canadian Law Governed His Relationship with Tiberon and the Joint Venture; He Should Not Be Allowed To Avoid Canadian Law While Trying to Assert Bonus Rights Under Those Same Contracts.**

A public issue factor properly given significant weight in *forum non conveniens* considerations is the strong interest and efficiency in allowing the court in the jurisdiction whose law applies, to be the forum for the case. Here Canadian contract law and business judgment rule application will play am important role in the case. The efficiency in having a Canadian court apply its own law, rather than having this court expending its precious court time learning the Canadian law makes much sense.

Moss's assertion that Canadian law should no longer apply because of the shift of management operations to Viet Nam is not a valid reason to abandon the parties' agreement to have that law apply to their contracts. There was a substantial connection between the contractual relationships and Toronto when the contracts were, as Moss puts it in his Complaint at ¶ 7, "highly negotiated."

**J. The Fallacious Interpretation of the Buy-out Agreement Argument.**

Moss argues that the terms of the Tiberon buy-out agreement prevent Tiberon from paying Moss his bonus. The term on which Moss relies had an exception for actions taken in the ordinary course of business. Paying Moss a bonus under his contract, if Moss had performed well enough to meet the bonus benchmarks, would have been an action in the ordinary course of business, and would not have been material to the buy-out situation anyway. *See* the Cresswell Declaration at ¶ 6. Plus as noted above, the "no bonus to Moss" decision was based on considerations of the merits or lack of merits of Moss's performance and whether or not he met the mutually agreed upon benchmarks.

**CONCLUSION**

Moss did not achieve his predetermined annual objectives (even though he states he did). He colors his claim for relief on the notion that his failure to reach those objectives stemmed from circumstance beyond his control. His bonus objectives were mutually agreed upon. That he agreed to objectives subject to factors that were beyond his control is not a justification that

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

allows him to claim a bonus.

In Tiberon's moving papers, it concluded by saying, "[t]he parties freely agreed to apply Canadian law to any disputes arising under their labor contracts. More efficient handling of this dispute will occur if Moss files the case in Canada. More witnesses are there, more documents are there, and importantly, the governing law is there. Whatever deference may be given to a local plaintiff's forum choice is not strong enough to defeat these considerations. For all these reasons, Tiberon Metal's motion to dismiss on *forum non conveniens* grounds should be granted."

Moss's flimsy attempt to denigrate the choice of law provision in the contracts he claims he is enforcing in this suit, and his unsupported and incorrect effort to downplay the importance of the evidence that will come from the Toronto witnesses identified by Tiberon, do not change the conclusion that Toronto is a more logical and practical forum for the case than the Northern District of California.

DATED: October 12, 2007

MBV LAW LLP

By /s/
DAVID J. BROWN
Attorneys for Defendant
TIBERON MINERALS LTD.

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111