James M. Hanavan, State Bar No. 66097
Kristen E. Drake, State Bar No. 202827
CRAIGIE, McCARTHY & CLOW
540 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 732-7788
Facsimile: (415) 732-7783

Attorneys for Plaintiff Trevor Moss

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TREVOR MOSS,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>TIBERON MINERALS LTD.,<br><br>　　　　Defendant. | Case No.: C 07-2732- SC<br><br>**DECLARATION OF PLAINTIFF TREVOR A. MOSS IN SUPPORT OF MOTION TO ALTER JUDGMENT PURSUANT TO FRCP 59(e) AND MOTION FOR RELIEF FROM JUDGMENT DISMISSING FOR *FORUM NON- CONVENIENS* PURSUANT TO FRCP 60(b)**<br><br>Hearing Date:　January 25, 2008<br>Time:　　　　　10:00 a.m.<br>Location:　　　Courtroom 1, 17th Floor<br>Judge:　　　　　Hon. Samuel Conti |

///
///
///
///
///
///
///

Declaration of Plaintiff Trevor Moss in Support of Motion to Alter Judgment and Motion for Relief from Dismissal for *Forum Non-Conviens*

I, Trevor A. Moss, declare:

1.  I am the plaintiff in the above-entitled action, and earn my living as a self-employed engineering consultant in Santa Rosa, California. It would be extremely costly and detrimental to my business should I be required to pursue my claim in Ontario. I have no employees or assistants to assume responsibility for my work in the event I am required to spend any significant time in Toronto. The cost of pursuing this case in Ontario would be an extreme financial hardship, which I can ill afford and may lead to the failure of my consultancy.

2.  In the spring of 2005 I was recruited by the Nui Phao Mining Joint Venture Company Ltd., a Vietnamese company, ("Nuiphaovica"), to provide consulting services to Nuiphaovica in connection with its development plans for the Nui Phao tungsten-fluorspar project in Vietnam. After a series of discussions, I entered into contract with Nuiphaovica in August of 2005 with the agreement signed by Mario Caron. Nuiphaovica is governed by a management board, with Mr. Caron as its Chairman, whose individual members are drawn from the three companies which between them own 100% of Nuiphaovica. The companies are Tiberon Minerals, Ltd. ("Tiberon"), Thai Nguyen Mineral Company ("TNMC") and the Export Import Investment Company Thai Nguyen ("Intraco"), the successor company to Hanoi General Export Import Company, Thai Nguyen Branch ("Geleximco").

3.  At the time of commencement of my contract, Nuiphaovica, and the two Vietnamese members of the Joint Venture TNMC and Intraco, had their offices in Vietnam, where all of its business activities were and still are located. Tiberon had an office in Toronto, Canada. I was directly responsible for the management of Nuiphaovica and, accordingly, the General Director of Nuiphaovica, who is, along with Mr. Caron, a member of Nuiphaovica's management board, reported to me. During my employment by Nuiphaovica, approximately two thirds of my time was divided about evenly between California and Australia, where the project engineers and some of the project consultants were and are located. Most of my remaining time was spent in Vietnam, in the offices of Nuiphaovica and at the project site, or in Singapore, where counsel for the project lenders is located.

1

Declaration of Plaintiff Trevor Moss in Support of
Motion to Alter Judgment and Motion for Relief
from Dismissal for *Forum Non-Conviens*

4.     My Consulting Agreement with Nuiphaovica, attached to my complaint as Exhibit A and signed by me and Chairman Caron, states that the agreement is between "Nui Phao Mining Joint Venture Company Ltd. ('Nuiphaovica' or the 'Company')" and "Trevor Moss…(hereinafter called 'Moss' or the 'Consultant')". The Consulting Agreement provides, in language drafted by Nuiphaovica, that: "Moss shall participate in the formal bonus plan adopted by the Company [Nuiphaovica]. The bonus to Moss is based on predetermined annual objectives mutually agreed upon each year by the parties, for the period through 2006, within eight (8) weeks after the Effective Date, and thereafter within eight (8) weeks after the start of each calendar year, and shall be set at a target of 0 to 75% of Moss's prior twelve (12) month consulting fee with a target of 40% as a bonus. Determination of whether the annual objectives have been satisfied shall be made by the Compensation Committee, to be ratified by the Board of Directors."

5.     Although objectives had been agreed upon between me and Nuiphaovica for calendar year 2006, I received no bonus despite the fact that I had achieved each and every one of those objectives. The issue presented by my lawsuit is my attainment of those 2006 objectives. Percipient witnesses must have sufficient detailed knowledge of the aspects governing my work on the project to be able to attest with regard to the details of my achievement of the objectives.

6.     My Consulting Agreement expressly states that I was to be included in Nuiphaovica's bonus plan, and the decision concerning my performance of the objectives would be determined by Nuiphaovica's board. In fact, I worked with several members of the Nuiphaovica board, and its membership has far more percipient knowledge of my performance of the objectives than the members of Tiberon's board. Mario Caron served on both boards, but the membership of the two boards was otherwise entirely different.

7.     Nuiphaovica's board, which apparently neither considered whether I satisfied the objectives pursuant to my Consulting Agreement nor voted to either deny or award me my bonus, consisted, immediately prior to the termination of my Consulting Agreement of: Mario Caron and Walter Henry, a Tiberon officer; Nigel Tamlyn (General Director of Nuiphaovica); Timothy

2

Declaration of Plaintiff Trevor Moss in Support of Motion to Alter Judgment and Motion for Relief from Dismissal for *Forum Non-Conviens*

(Tinh) Danh (Legal Representative for Nuiphaovica); Do Lan – the Thai Nguyen Mineral Company representative and, Nguyen Van Thang – Intraco representative.

8. According to the Declaration of Steven Cresswell, filed with Tiberon's Reply Brief, Richard Lister and Clifford Davis constituted the "Compensation Committee" that determined Nuiphaovica should not pay me my bonus, *and this decision was ratified by Tiberon's board, not by Nuiphaovica's board.* Neither Richard Lister nor Clifford Davis is or ever was either a director or officer of Nuiphaovica. Furthermore, neither individual was in anyway involved in working with me to achieve the objectives agreed upon between me and Nuiphaovica, so any information they would have had concerning my performance would not be based upon personal knowledge or their own experience.

9. All of my negotiations concerning the terms of my employment and payment of my compensation, as well as the agreement as to objectives, were with Nuiphaovica's Chairman, Mario Caron. When Chairman Caron and I agreed to end the consulting arrangement, he informed me that the Nuiphaovica bonuses would be determined at the end of the year. Although I had received Tiberon stock options as part of my compensation package, I was required by the terms of a separate option agreement with Tiberon to exercise those options within three (3) months of ending my Nuiphaovica employment on August 31, 2006, and I did so. I first became aware that Dragon Capital was seeking to acquire Tiberon's stock when Chairman Caron responded to my December 19, 2006, letter to Nuiphaovica inquiring as to the payment of my bonus.

10. I certainly never agreed that any payment dispute between me and Nuiphaovica would be decided in Ontario, or that Tiberon could substitute its discretion for that of my employer, Nuiphaovica. While I did not anticipate Nuiphaovica would fail to pay as we had agreed the bonus I had earned, I would have rejected any requirement in my contract that would have required me to incur the difficulty of filing a lawsuit in Toronto or anywhere outside of California to get paid. The Consulting Agreement, which was presented to me by Mario Caron, did not address forum selection, and the language concerning my participation in Nuiphaovica's

3

bonus plan and the manner in which my entitlement to payment was to be determined was presented to me by Mr. Caron. The Consulting Agreement's original terms, prepared by Nuiphaovica's counsel, only applied to me and Nuiphaovica, and I required that Tiberon provide stock options as additional compensation and a guarantee of Nuiphaovica's performance.

11. It was my decision to require that the terms of my Consulting Agreement with Nuiphaovica be guaranteed by Tiberon because, in the event of nonpayment, I would have otherwise been in the position of being forced to sue a Vietnamese company to obtain a judgment I would most likely have no way of collecting. I had my California attorney prepare a draft performance guarantee and submitted it to Chairman Caron, who was also the Chief Executive Officer of Tiberon. I believe it was adopted with only minor changes by Tiberon, one of which included replacing California with Ontario in the "choice of law" provision.

12. I expected that I would be able to sue in California in the event of nonpayment by Nuiphaovica, and my concern about applicable law was that the Consulting Agreement be interpreted in accordance with British common law principles, rather than in accordance with Vietnamese law, which I understand is some type of French-type civil law system. I was paid my salary from Nuiphaovica in a timely fashion, and received the minimum bonus of 40% of that base salary for the *pro-rata* portion of the 2005 calendar year that I worked. At the time of payment of the 2005 bonus, I was informed by Chairman Caron that the 40% bonus amount was the minimum that would be paid, and that the objectives called for in my Consulting Agreement were established as a measure against which to determine the *additional* bonus of up to 75% of the "prior twelve (12) month consulting fee," which is why I was paid a 40% bonus for 2005 despite the fact that no objectives had been agreed upon between me and Nuiphaovica.

13. At no time during 2005 and 2006 did Chairman Caron inform me that some group of individuals unconnected to Nuiphaovica's board would be deciding whether I had qualified for the bonus payment specified in my Consulting Agreement with Nuiphaovica. It was only after Tiberon had filed its motion to dismiss in this lawsuit that I learned some entity formed by Dragon Capital had acquired all of Tiberon's stock, that Tiberon's officers and directors had sold

4

Declaration of Plaintiff Trevor Moss in Support of
Motion to Alter Judgment and Motion for Relief
from Dismissal for *Forum Non-Conviens*

all of their ownership interest to Dragon Capital in December of 2006 and that those officers and directors had signed a Pre-acquisition Agreement promising that neither they nor Nuiphaovica, which was 70% owned by Tiberon, would pay me my 2006 bonus without Dragon Capital's prior approval.

14. The objectives that had been agreed upon between me and Nuiphaovica for 2006 were detailed and definitive and, in my view, only individuals directly involved with development activities, Mr. Caron and those listed by me in my original declaration, could be considered qualified as witnesses capable of personally testifying as to my performance to enable an accurate assessment of my achievement of those 2006 objectives. Neither Richard Lister nor Clifford Davis visited any of the work sites at any time during the term of my Consulting Agreement, or had any involvement in my work. For anyone to be considered a percipient witness, and especially anyone who claims to have "intimate knowledge," that person would have to have had specific knowledge of the details of the project and the details of my services, which would require them to have visited the key development sites in Dai Tu and Hanoi, Vietnam (the project sites), Brisbane Australia (location of the development engineers) and Singapore (location of the project bankers and lawyers).

15. With respect to supporting evidence, I have retained all of the documentation generated or worked on by me during my consulting services. All of this material was provided to Nuiphaovica in the form of a computer disc at the time my employment ended. I am not aware of any "historical" Tiberon documents that would have any bearing on my performance of the project objectives adopted in February of 2006 between me and Chairman Caron.

16. I would expect my attorney to obtain needed testimony from witnesses in Southeast Asia rather than bringing them all here, and Tiberon and/or its owner, Dragon Capital, would certainly have no difficulty producing witnesses in San Francisco such as Mr. Caron, Mr. Cresswell and Matt Bolu, since those individuals are either in their employ or have demonstrated a willingness to cooperate with them. Matt Bolu and Steven Cresswell are both employed by Nuiphaovica, one in Vancouver, British Columbia, and the other in Hanoi, Vietnam. Tiberon, as

5

Declaration of Plaintiff Trevor Moss in Support of Motion to Alter Judgment and Motion for Relief from Dismissal for *Forum Non-Conviens*

the Vietnam headquartered 70% owner of Nuiphaovica, can obviously make those two individuals available for deposition or trial, and both Mr. Cresswell and Mario Caron, formerly the Chairman of Nuiphaovica and Chief Executive Officer of Tiberon, have assisted Tiberon by supplying supporting declarations.

17. Apparently, the relevant Tiberon records are located in Hanoi, since Mr. Cresswell lives there, signed his declaration there, and reviewed the corporate records there, although Tiberon has not provided any of those corporate records. Since all of the events relevant to my claim occurred within the past two years, it does not appear that relevant Nuiphaovica and Tiberon records would be particularly extensive or difficult to produce. Further, it does not appear that Tiberon "historical" records allegedly located in Toronto, Ontario, even if bulky and numerous, would be relevant to my claim.

18. I am over eighteen years of age and have the capacity to perceive and recollect. If called upon to testify, I am competent to testify to the foregoing matters, which are within my personal knowledge.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on December 16, 2007.

                    */s/ Trevor A. Moss*
                    Trevor A. Moss

6

Declaration of Plaintiff Trevor Moss in Support of Motion to Alter Judgment and Motion for Relief from Dismissal for *Forum Non-Conviens*

<u>GENERAL ORDER 45 CERTIFICATION</u>

I, James M. Hanavan, hereby attest pursuant to N.D. Cal. General Order No. 45 that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: December 16, 2007                          CRAIGIE, McCARTHY & CLOW

_____*/s/ James M. Hanavan*_____
By: James M. Hanavan
Attorneys for Plaintiff Trevor Moss

7

Declaration of Plaintiff Trevor Moss in Support of Motion to Alter Judgment and Motion for Relief from Dismissal for *Forum Non-Conviens*