James M. Hanavan, State Bar No. 66097
Kristen E. Drake, State Bar No. 202827
CRAIGIE, McCARTHY & CLOW
540 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 732-7788
Facsimile: (415) 732-7783

Attorneys for Plaintiff Trevor Moss

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TREVOR MOSS,<br><br>    Plaintiff,<br><br>    v.<br><br>TIBERON MINERALS LTD.,<br><br>    Defendant. | Case No.: C 07-2732- SC<br><br>**DECLARATION OF JAMES M. HANAVAN IN SUPPORT OF MOTION TO ALTER JUDGMENT PURSUANT TO FRCP 59(e) AND MOTION FOR RELIEF FROM JUDGMENT DISMISSING FOR *FORUM NON-CONVENIENS* PURSUANT TO FRCP 60(b)**<br><br>Hearing Date:  January 25, 2008<br>Time:          10:00 a.m.<br>Location:      Courtroom 1, 17th Floor<br>Judge:         Hon. Samuel Conti |

///
///
///
///
///
///
///

Declaration of James M. Hanavan in Support of Motion to Alter Judgment and Motion for Relief from Dismissal for *Forum Non-Conveniens*

I, James M. Hanavan, declare:

1. I am an attorney at law duly admitted to practice before all the courts of the State of California. I am affiliated with the law firm of Craigie, McCarthy & Clow, attorneys of record for plaintiff Trevor Moss.

2. A few days before the opposition to Tiberon's *forum non conveniens* motion was due, I conducted internet research concerning defendant Tiberon Minerals, Ltd. ("Tiberon"). In the course of conducting my internet research, I became aware that a complaint had been filed earlier this year in federal district court in Pennsylvania naming Tiberon and a company named "Dragon Capital" as defendants. I was able to obtain a copy of the complaint through the "PACER" federal electronic filing system.

3. Attached to the Pennsylvania complaint as an exhibit were a few pages from a document entitled "PRE-ACQUISITION AGREEMENT," which the complaint alleged was an agreement between Tiberon and Dragon Capital. According to the complaint, the purpose of the PRE-ACQUISITION AGREEMENT was to limit Tiberon's ability to conduct business so as to protect Dragon Capital, which was purportedly in the process of acquiring all of Tiberon's stock. When I obtained a copy of the complaint and its exhibits, I e-mailed a copy to Tiberon's counsel, who informed me that he was unaware of the Pennsylvania complaint and the PRE-ACQUISITION AGREEMENT.

4. Our office then served discovery on Tiberon's counsel seeking to evaluate and authenticate the PRE-ACQUISITION AGREEMENT's terms, as well as to determine when, or if, Trevor Moss's employer, Nuiphaovica, had evaluated Trevor Moss's performance of the objectives pursuant to the parties' Consulting Agreement. In its moving papers, Tiberon had claimed plaintiff could not recover because the decision to award plaintiff a bonus was a matter of business discretion, and Tiberon's witnesses and records would show that such discretion had been properly exercised. Since the Ontario witnesses and Tiberon documents identified in the moving papers were apparently offered to support this "business judgment" defense, it was extremely important that we verify whether Nuiphaovica, which is 70% owned by Tiberon, was

1

Declaration of James M. Hanavan in Support of
Motion to Alter Judgment and Motion for Relief
from Dismissal for *Forum Non-Conveniens*

actually in a position to even exercise "business judgment" in connection with the Trevor Moss bonus, or whether, by virtue of this PRE-ACQUISITION AGREEMENT, Nuiphaovica had, through the agreement of its 70% owner, relinquished or given that power to Dragon Capital.

5. Before I saw the Pennsylvania complaint, I had no knowledge whatsoever suggesting that the Tiberon officers and directors identified in Tiberon's moving papers may have sold all of their ownership interests in Tiberon to Dragon Capital and, at the same time, relinquished the power and ability of Nuiphaovica to consider Moss's entitlement to a 2006 bonus under the parties' Consulting Agreement. Based upon the motion papers and the supporting Declaration of Mario Caron, I had been lead to believe that Tiberon maintained its offices in Toronto, Ontario, and continued to be managed by the Ontario officers and directors identified by Mr. Caron in his declaration, the same people who had been running Tiberon when the Moss/Nuiphaovica Consulting Agreement terminated on August 31, 2006.

6. The Ninth Circuit has held that the *materiality* of a moving party's proposed witnesses is the first factor a trial court must consider in evaluating witness convenience in connection with a *forum non conveniens* motion. Obviously, if the witnesses' proposed testimony is of little or no relevance to the issue or issues to be decided, their "convenience" is entitled to little or no consideration. Clearly, if the terms of the PRE-ACQUISITION AGREEMENT established that Nuiphaovica relinquished its power to exercise its discretion in connection with the Moss bonus to Dragon Capital, a nonparty, or if, in fact, Nuiphaovica had never actually performed that discretionary, function, then Tiberon's proposed "business judgment" witnesses and documents were not relevant, and their location should not be considered at all.

7. Tiberon's moving papers were woefully deficient under Ninth Circuit authority in adequately describing either the proposed witnesses' testimony or the content and volume of the proposed Tiberon records. Nevertheless, the moving papers were clearly based upon their purported relevance to Nuiphaovica's "business judgment" defense. Since Tiburon is being sued on its unconditional promise guaranteeing Nuiphaovica's performance under the Consulting

2

Agreement, Tiberon can rely on any defense available to Nuiphaovica in defending any claim that the Consulting Agreement was breached.

8. Copies of our discovery requests, including requests for admission, interrogatories and document production requests are attached hereto as Exhibits "A" through "C", respectively. As a result of the order granting Tiberon's *forum non conveniens* motion, we were unable to obtain discovery responses, although all of our discovery was directed to the only argument presented by Tiberon as to the relevance of witnesses and documents located in Ontario, which is that these witnesses and documents would establish Nuiphaovica's "business judgment" defense to plaintiff's claim.

9. Although the moving papers had not cited any Ontario law on the "business judgment" defense, the reply brief supplied one Ontario case applying the "business judgment" defense and a declaration from an employee of Tiberon's "successor in interest," Steven Cresswell, claiming to be a summary of Tiberon's business records relevant to Nuiphaovica's business judgment defense. Although no Tiberon records have ever been provided, Mr. Cresswell's declaration purported to relate what those business records would show if those records had been provided. In fact, if accurate, Mr. Cresswell's declaration shows that the plain terms of the Consulting Agreement were disregarded, and that Nuiphaovica had never evaluated plaintiff's entitlement to a bonus under the Consulting Agreement.

10. The Cresswell Declaration filed with the reply papers also stated that John Shrimpton, Dragon Capital's principal according to the Pennsylvania complaint, was actually present and involved with those purporting to consider the Moss bonus. The fact Mr. Shrimpton was "sitting in" with the people Mr. Cresswell claimed had considered the Moss bonus tended to confirm language from the exhibit to the Pennsylvania complaint stating that no bonus to Mr. Moss could or would be paid by either Nuiphaovica or Tiberon, at least not without Dragon Capital's express knowledge and permission.

11. Some weeks after the order granting Tiberon's motion was entered, I became aware of a Canadian web-site, www.sedar.com. SEDAR (the System for Electronic Document

3

Declaration of James M. Hanavan in Support of Motion to Alter Judgment and Motion for Relief from Dismissal for *Forum Non-Conveniens*

Analysis and Retrieval) is the system used for electronically filing most securities related information with the Canadian securities regulatory authorities. Filing with SEDAR started January 1, 1997, and is now mandatory for most reporting issuers in Canada.

12. SEDAR is the official site that provides access to public securities documents and information filed by public companies and investment funds with the Canadian Securities Administrators (CSA) in the SEDAR filing system. According to the site, the statutory objective in making public this filed information is to enhance investor awareness of the business and affairs of public companies and investment funds and to promote confidence in the transparent operation of capital markets in Canada. From that site, I obtained copies of the Tiberon Canadian government filings attached hereto as follows:

Exhibit "D":  Tiberon December 19, 2006 Material Change Report
Exhibit "E":  Pre-Acquisition Agreement
Exhibit "F":  Tiberon May 10, 2006 Minutes
Exhibit "G":  Tiberon February 12, 2007 Material Change Report
Exhibit "H":  Early Warning Report, dated February 12, 2007
Exhibit "I":  Tiberon March 29, 2007 Annual Information Form
Exhibit "J":  BC Company Summary for Tiberon Minerals Ltd.
Exhibit "K":  BC Company Summary for TML Acquisition Ltd.
Exhibit "L":  Public Search Results for Tiberon Minerals Ltd., Update January 18, 2007
Exhibit "M":  Public Search Results for Tiberon Minerals Ltd., Update September 11, 20007

13. From a review of these Tiberon government filings, it is readily apparent that Mario Caron's declaration, filed with the moving papers, is false and misleading in that it suggests that both he and many of the Ontario "witnesses" listed by him are in some way connected or involved in the business affairs of Tiberon. In fact, none of the people listed as residing in Ontario have any connection or involvement with Tiberon, other than having once worked there. More to the point, no evidence was presented suggesting that any of the Ontario

4

Declaration of James M. Hanavan in Support of Motion to Alter Judgment and Motion for Relief from Dismissal for *Forum Non-Conveniens*

1  witnesses identified by either Mr. Caron or Mr. Cresswell, other than Mr. Caron himself, has any

2  percipient knowledge concerning the Moss performance of the Consulting Agreement objectives.

3  The fact that these people were formerly connected with Tiberon in some capacity does not

4  indicate or suggest that they have anything relevant to say on the issues presented by this lawsuit.

5       14.     As the attached government filings by Tiberon show, the Ontario "witnesses"

6  identified by Mr. Caron, and Mr. Caron himself, sold all of their holdings in Tiberon to Dragon

7  Capital in December of last year, and that both Nuiphaovica and Tiberon expressly relinquished

8  any authority they would otherwise have had to play any role in the determination of Trevor

9  Moss's bonus at that time.  Since the Moss/ Nuiphaovica Consulting Agreement terminated on

10 August 31, 2006 and payment of a bonus was thus expressly prohibited under the PRE-

11 ACQUISITION AGREEMENT, there is no "business judgment' defense available, and no

12 proposed Ontario witnesses, other than Mr. Caron, have testimony relevant to the issue of Mr.

13 Moss's performance of the 2006 Consulting Agreement objectives.

14      15.     According to the Tiberon filings, Tiberon incorporated federally under the Canada

15 Business Corporations Act ("CBCA").  Tiberon was thereafter discontinued and "exported" from

16 the CBCA to British Columbia, where it was amalgamated with the Dragon-formed company that

17 originally acquired the Tiberon shares, TML Acquisition Ltd., on September 1, 2007.  It has a

18 registered office at 1200 Waterfront Centre, 200 Burrard St., in Vancouver, British Columbia,

19 which is the law office of Borden Ladner Gervais Borden, according to that firm's web site.

20      16.     The Tiberon directors in the British Columbia filings are listed as: John Shrimpton

21 and David Woodhouse, both with a Ho Chi Minh City address, and Loren Komperdo, who is

22 located in Calgary, Alberta.  It is apparent that any and all Tiberon connections with Ontario had

23 ended *before* Tiberon filed its *forum non conveniens* motion, and its only present connection to

24 Canada is an address at a British Columbia law office.  In fact, Dragon Capital has explained that

25 it is working diligently to sever any and all connections to Canada.

26      17.     Dragon Capital maintains a web-site at http://www.dragoncapital.com where it

27 discusses its business operations, including its operations in connection with Tiberon and

28

5

Declaration of James M. Hanavan in Support of
Motion to Alter Judgment and Motion for Relief
from Dismissal for *Forum Non-Conveniens*

1  Nuiphaovica. According to the site, Dragon Capital is an integrated financial services provider
2  with an exclusive focus on Vietnam's capital markets. According to Dragon Capital, it is the
3  largest and most experienced asset manager in Vietnam with total group assets in excess of US $2
4  billion. The site states that Dragon Capital employs over 70 people based in offices in Ho Chi
5  Minh City, Hanoi and the United Kingdom.

6        18. Dragon Capital's site advises that it is represented by Borden Ladner Gervais
7  Borden, which firm's British Columbia office is also Tiberon's only Canadian "business office."
8  The September 2007 "Monthly Update" for Dragon Capital's Vietnam Resource Investments,
9  attached and available on the web site, explains Dragon Capital's activities with respect to
10 Tiberon: "One of the tasks which is simple to express but complex in its execution has been that
11 of extracting ownership of Tiberon's 70% interest in [Nuiphaovica] from that of a Canadian
12 registered company and relocating it to a Singapore-registered Tiberon vehicle." Attached hereto
13 as Exhibit "N" is the September 2007 "Monthly Update".

14       19. I am over eighteen years of age and have the capacity to perceive and recollect. If
15 called upon to testify, I am competent to testify to the foregoing matters, which are within my
16 personal knowledge.

17 I declare under penalty of perjury under the laws of the United States that the foregoing is
18 true and correct and that this declaration was executed on December 19, 2007.

                                 */s/ James M. Hanavan*
                                 James M. Hanavan

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 · Facsimile: 415/732-7783

6

Declaration of James M. Hanavan in Support of
Motion to Alter Judgment and Motion for Relief
from Dismissal for *Forum Non-Conveniens*