This 11th day of May, 2007.

/s/ Nicholas M. Centrella
Nicholas M. Centrella
PA. Bar No. 67666
P. Connell McNulty
PA. Bar No. 87966
**CONRAD O'BRIEN GELLMAN &
ROHN, P.C.**
1515 Market Street, 16th Floor
Philadelphia, Pennsylvania 19102-1916
Telephone: 215-864-9600
Fax: 215-864-9620

**OF COUNSEL:**

Catharine B. Arrowood
N.C. Bar No. 6984
Deborah L. Edney
N.C. Bar No. 24220
**PARKER POE ADAMS & BERNSTEIN LLP**
Wachovia Capitol Center
150 Fayetteville Street, Suite 1400
Post Office Box 389
Raleigh, NC 27602

34

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OSRAM SYLVANIA PRODUCTS INC.,** | ) ) ) ) | **CIVIL ACTION** |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) ) | **VERIFICATION** |
| **TIBERON MINERALS LTD., NUI PHAO MINING JOINT VENTURE COMPANY LIMITED and DRAGON CAPITAL MANAGEMENT LIMITED,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) ) | |

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF  Bradford

    ROBERT J. FILLNOW, being first duly sworn, says that he is the Vice President of the Plaintiff in the above-captioned action; that he has read the foregoing complaint and knows the contents thereof, and that the complaint and contents are true to his own knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters he believes them to be true.

35

This the 10th day of May, 2007.

_Robert J. Fillnow_

ROBERT J. FILLNOW

Subscribed and sworn before me

this _May 10, 2007_ (Date)

_Suzanne P. Holbert_ Notary Public

_Bradford_ County

My Commissions Expires: _____ (Date)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Suzanne P. Holbert, Notary Public
North Towanda Twp., Bradford County
My Commission Expires Sept. 17, 2009
Member, Pennsylvania Association of Notaries

CLT 1039855v15

# EXHIBIT 1



Press Release #06-09

## TIBERON SECURES PROJECT FINANCING FOR NUI PHAO DEVELOPMENT
### - Project financing facility represents last major milestone on the road to production -

**Toronto, ON, June 7, 2006** – Tiberon Minerals Ltd. (TBR:TSX), on behalf of the Nui Phao Mining Joint Venture Company Ltd. (Nuiphaovica), today announced that it has received and approved an underwriting commitment letter from its previously announced Mandated Lead Arrangers which include Bayerische Hypo-und Vereinsbank AG (HVB), Caterpillar Financial SARL (Caterpillar), Export Development Canada (EDC), Fortis Bank S.A./N.V. (Fortis) and Standard Chartered Bank (SCB), to provide a Commercial Facility for up to US$210 million and a Cost Overrun Facility for up to US$14 million (the Facilities).

The Commercial Facility represents 70 percent of the direct project cost estimate of US$230 million (July 2005 Final Feasibility Study), capitalized interest during construction, startup costs, financing fees and a cost escalation allowance at the Lead Arrangers' request. The remaining 30 percent will be funded by Tiberon and each of its joint venture partners on a pro-rata basis. The Commercial Facility consists of two tranches which will both be fully underwritten. The first tranche is for up to US$180 million and will have a ten and a half-year term from initial drawdown and the second tranche is for up to US$30 million and will have an eleven and a half-year term.

Financial close is subject to completion of final loan documentation which is expected to be completed before year-end, and initial drawdown is contingent upon satisfying certain conditions precedent normally associated with a facility of this type. Repayment of the Commercial Facility will begin following completion of construction and initial startup. Both Facilities are secured against the Nui Phao Mine and will be guaranteed by Nuiphaovica and Tiberon until completion is achieved.

The Mandated Lead Arrangers have also provided a Cost Overrun Facility for up to US$14 million which will be drawn down on an equal basis with contingent equity, which will be held in escrow, to fund any cost overruns that could incur during development of the Nui Phao mine.

Both Commercial Facility and Cost Overrun Facility will be administered by Fortis as Documentation and Political Risk Mitigation Agent, HVB as Technical Agent, SCB as Offtake and Modeling Agent, EDC as Environment and Resettlement Agent and Caterpillar as Insurance Agent.

"The Mandated Lead Arrangers have previously worked in collaboration to support projects for several major international mining companies," commented Walter Henry, Tiberon's vice president finance and CFO. "Given the fact that they have partnered with Tiberon in developing this world-class tungsten-fluorspar deposit is validation of the quality of the project and is a vote of confidence in Tiberon's management and development plans for Nui Phao."

In addition, the Multilateral Investment Guarantee Agency (MIGA), a member of the World Bank, and Export Development Canada are currently working toward finalizing a proposal with respect to providing political risk insurance up to the level required by the Lead Arrangers.

"Throughout the past several months, Tiberon has achieved both financial and offtake agreements with organizations that are leaders in their respective fields," said Mario Caron, president and CEO, Tiberon Minerals. "Furthermore, global trends within tungsten and fluorspar markets have remained firm despite an overall commodity price pullback – reflecting well upon the agreements struck between Tiberon and its partners."



**EXHIBIT**

1

2

**About Tiberon Minerals**

Tiberon Minerals Ltd. is poised to become the world's largest primary tungsten producer and a major producer of acid-grade fluorspar, as well as bismuth, copper and gold through development of its Nui Phao property in Vietnam. Nui Phao contains over 55 million tonnes of proven and probable reserves (25.1 million tonnes proven, 30.6 million tonnes probable) for an estimated mine life in excess of 16 years, making it one of the largest tungsten-fluorspar deposits located outside China. Tiberon's common shares trade on the Toronto Stock Exchange under the symbol TBR. There are currently 75.3 million shares outstanding.

For further information, please visit our website at www.tiberon.com, or contact:
Mario Caron, P. Eng., President & CEO
Walter Henry, Vice President, Finance and CFO
Jodi Peake, Vice President, Investor Relations
(416) 214-1877

*Some of the statements contained in this release are "forward-looking statements". Such forward-looking statements involve known and unknown risks, uncertainties and other factors that may cause our actual results, performance or achievements to differ materially from the anticipated results, performance or achievements expressed or implied by such forward-looking statements. Factors that could cause actual results to differ materially from anticipated results include risks and uncertainties such as: risks relating to estimates of reserves, mineral deposits and production costs; mining and development risks; the risk of commodity price fluctuations; political and regulatory risks; and other risks and uncertainties detailed in the Company's Annual Information Form dated March 24, 2006 and in the reports and disclosure documents filed by Tiberon from time-to-time with Canadian securities regulatory authorities. The Company disclaims any intention or obligation to update or revise any forward-looking statements, whether as a result of new information, future events or otherwise.*

# **EXHIBIT 2**



**CÔNG TY LIÊN DOANH KHAI THÁC CHẾ BIẾN KHOÁNG SẢN NÚI PHÁO**
**NUI PHAO MINING JOINT VENTURE COMPANY**

| | | |
|---|---|---|
| **Trụ sở chính/Head Office** | **Văn phòng dự án/Project Office** | **Văn phòng đại diện Hà Nội/Hanoi Representative Office** |
| Xã Hà Thượng, huyện Đại Từ, | Phố Chợ Mới, thị trấn Đại Từ, tỉnh Thái Nguyên, Việt Nam | 29 Xuân Diệu, Tây Hồ, Hà Nội, Việt Nam |
| tỉnh Thái Nguyên, Việt Nam | ĐT: 84-280-824 068   Fax: 84-280-824 487 | ĐT: 84-4-718 2490   Fax: 84-4-718 2491 |
| | Email: nuiphao@hn.vnn.vn | Email: nuiphaovica@hn.vnn.vn |

25 April 2007

By Facsimile

OSRAM Sylvania Products Inc.
Attention:  Purchasing Manager (Mr. Dean Schiller)
Hawes Street
Towanda, Pennsylvania 18840
USA

Fax: +1 570 268 5178

### Base Agreement Termination Notice

Ladies and Gentlemen:

Reference is made to the Base Agreement dated 16 May 2005 among Osram Sylvania Products Inc. ("Buyer"), Nui Phao Mining Joint Venture Company Limited, a/k/a Nuiphaovica ("Seller"), and Tiberon Minerals Ltd. ("Tiberon"), as amended as of the date hereof (the "Base Agreement"). Capitalized terms that are used in this notice that are not defined in this notice are used as defined in the Base Agreement.

As you are aware, Seller failed to obtain the Required Financing Amount by the date which is 270 days after the Financing Deadline. Pursuant to Section 2.3(d) of the Base Agreement, Seller hereby notifies Buyer of the termination of the Base Agreement effective as of the date of this notice.

Pursuant to Section 19.1 of the Base Agreement, a copy of this notice has been deposited with an international overnight delivery service for delivery to you.

Sincerely,

For and on behalf of
Nui Phao Mining Joint Venture Company Limited:

Mario Caron
Chairman,
Nui Phao Mining Joint Venture Company Limited

cc:     Mr. James A. Gass,
        VP, Corporate Projects, Osram Sylvania

        President, Tiberon Minerals Ltd.

**EXHIBIT**

2



**CÔNG TY LIÊN DOANH KHAI THÁC CHẾ BIẾN KHOÁNG SẢN NÚI PHÁO**
**NUI PHAO MINING JOINT VENTURE COMPANY**

| Trụ sở chính/Head Office | Văn phòng dự án/Project Office | Văn phòng đại diện Hà Nội/Hanoi Representative Office |
|---|---|---|
| Xã Hà Thượng, huyện Đại Từ, | Phố Chợ Mới, Đị Trấn Đại Từ, tỉnh Thái Nguyên, Việt Nam | 29 Xuân Diệu, Tây Hồ, Hà Nội, Việt Nam |
| tỉnh Thái Nguyên, Việt Nam | ĐT: 84-280-824 053 · Fax: 84-280-824 487 | ĐT: 84-4-718 2490  Fax: 84-4-718 2491 |
| | Email: nuiphao@hn.vnn.vn | Email: nuiphaovica@hn.vnn.vn |

25 April 2007

<u>By Facsimile</u>

OSRAM Sylvania Products Inc.
Attention:  Purchasing Manager (Mr. Dean Schiller)
Hawes Street
Towanda, Pennsylvania 18840
USA

Fax: +1 570 268 5178

<u>Option Agreement Termination Notice</u>

Ladies and Gentlemen:

Reference is made to the Option Agreement dated 16 May 2005 among Osram Sylvania Products Inc. ("Buyer"), Nui Phao Mining Joint Venture Company Limited, a/k/a Nuiphaovica ("Seller"), and Tiberon Minerals Ltd. ("Tiberon"), as amended as of the date hereof (the "**Option Agreement**"). Capitalized terms that are used in this notice that are not defined in this notice are used as defined in the Option Agreement.

As you are aware, Seller failed to obtain the Required Financing Amount by the date which is 270 days after the Financing Deadline.  Pursuant to Section 2.3(d) of the Option Agreement, Seller hereby notifies Buyer of the termination of the Option Agreement effective as of the date of this notice.

Pursuant to Section 19.1 of the Option Agreement, a copy of this notice has been deposited with an international overnight delivery service for delivery to you.

Sincerely,

For and on behalf of
Nui Phao Mining Joint Venture Company Limited:

Mario Caron,
Chairman,
Nui Phao Mining Joint Venture Company Limited

cc:     Mr. James A. Gass,
        VP, Corporate Projects, Osram Sylvania

        President, Tiberon Minerals Ltd.

**<u>EXHIBIT 3</u>**

EXECUTION COPY

### PRE-ACQUISITION AGREEMENT

**THIS PRE-ACQUISITION AGREEMENT** (this "Agreement") is made as of the 18th day of December, 2006.

**BETWEEN:**

> **Vietnam Enterprise Investments Limited**, a company existing under the laws of the Cayman Islands ("**VEIL**"),
>
> – and –
>
> **Tiberon Minerals Ltd.**, a corporation existing under the laws of Canada (the "**Corporation**"),
>
> – and –
>
> **The other Parties hereto** (as defined herein).

**BACKGROUND:**

A.      The Corporation is a mining exploration and development company with a controlling interest in Nui Phao Mining Joint Venture Company which holds the Nui Phao tungsten/fluorspar polymetallic project ("**Nui Phao Project**") in Vietnam.

B.      The Corporation received a proposal from Dragon Capital Management Limited ("**DCML**"), as agent and manager of VEIL, Vietnam Growth Fund Limited ("**VGFL**") and Vietnam Dragon Fund Limited ("**VDFL**") (VEIL, VGFL and VDFL are hereinafter referred to collectively as the "**Dragon Funds**"), and entered into discussions which culminated in receipt of the Offer (as defined herein).

C.      After concluding that the Offer is fair to the Corporation's shareholders, from a financial point of view, and is in the best interests of the Corporation and its shareholders, the board of directors of the Corporation (the "**Board**") desires that VEIL directly or through a direct or indirect subsidiary (the "**Acquisition Company**") make an offer to purchase all of the issued and outstanding common shares in the capital of the Corporation (the "**Shares**") to all of the holders of Shares (the "**Shareholders**") and to all of the holders of other rights and securities entitling the beneficiary or holder thereof to receive or acquire Shares or securities convertible, exercisable or exchangeable for Shares other than Options (as hereinafter defined).

D.      VEIL and the Acquisition Company are prepared to make or cause an offer to purchase all of the issued and outstanding Shares to be made, subject to the terms and conditions of this Agreement.

E.      DCML is a party to this Agreement for the purpose of providing a covenant to cause the Dragon Funds to complete the transactions set out herein.



EXHIBIT

3

- 11 -

of the Subsidiaries of the Corporation has agreed to resign as a director promptly after the Offeror takes up and pays for at least a majority of the issued and outstanding Shares calculated on a fully diluted basis pursuant to the Offer, if so requested by the Offeror.

**2.11    Options.**  Subject to receipt of all necessary Regulatory Approvals, the Corporation shall be permitted to pay to those Option Holders who elect to exercise the Cashless Alternative referred to in Section 7 of the Stock Option Plan an amount equal to the amount by which $3.65 exceeds the exercise price for the relevant Options.  The Corporation agrees to use its best efforts to encourage all Persons holding Options to either (a) exercise their Options prior to the expiry of the Offer and to deposit all Shares issued in connection therewith to the Offer, or (b) elect to exercise the Cashless Alternative with respect to their Options on the Take-up Date and to receive payment from the Corporation equal to the cash difference between the exercise price and $3.65.  The Board shall not, prior to completion of the Offer, grant any additional Other Securities (including Options) to any Person.

**2.12    Solicitation of Acceptances of Offer.**  The Offeror will have the right to appoint a dealer manager in connection with the Offer and to solicit acceptances of the Offer.  If appointed, the dealer manager will be authorised to form a soliciting dealer group comprised of members of the Investment Dealers Association of Canada and of the stock exchanges in Canada and the United States to solicit acceptances of the Offer.

**ARTICLE 3**
**COVENANTS OF THE CORPORATION**

**3.1    Ordinary Course of Business.**  The Corporation covenants and agrees that, prior to the earlier of the termination of this Agreement and the appointment or election to the Board of the persons designated by the Offeror pursuant to Section 2.10, except as set out in the Disclosure Letter or unless the Offeror shall otherwise agree in writing or as otherwise expressly contemplated or permitted by this Agreement:

(a)    the Corporation shall, and shall cause each of its Subsidiaries to, conduct its and their respective businesses only in, and not take any action except in, the usual, ordinary and regular course of business and consistent with past practice;

(b)    the Corporation shall not, by itself or by its Subsidiaries, directly or indirectly, do or permit to occur any of the following:

(i)    issue, sell, pledge, lease, dispose of, encumber or agree to issue, sell, pledge, lease, dispose of or encumber (or permit any of its Subsidiaries to issue, sell, pledge, lease, dispose of, or encumber or agree to issue, sell, pledge, lease, dispose of or encumber):

(A)    any additional shares of, or any options, warrants, calls, conversion privileges or any other rights or securities of any kind entitling the beneficiary or holder thereof to receive or acquire shares or other ownership interests of, the Corporation or any of its Subsidiaries (other than pursuant to the exercise of Options as contemplated in this Agreement); or

- 12 -

(B)    any material assets or property of the Corporation or any of its Subsidiaries;

(ii)    amend or propose to amend its articles, by-laws or other constating documents or those of any of its Subsidiaries;

(iii)    split, combine or reclassify any Shares, or declare, set aside or pay any dividends or other distributions payable in cash, stock, property or otherwise with respect to the Shares or the shares of any of the Subsidiaries;

(iv)    redeem, purchase or offer to purchase (or permit any of its Subsidiaries to redeem, purchase or offer to purchase) any shares or other securities of the Corporation or any of its Subsidiaries, including under any normal course issuer bid;

(v)    reorganize, amalgamate, merge or otherwise continue the Corporation or any of its Subsidiaries with any other Person whatsoever;

(vi)    acquire or agree to acquire (by merger, amalgamation, arrangement, acquisition of stock or assets or otherwise) any Person or business whatsoever (including any division) or acquire or agree to acquire any material assets;

(vii)    enter into, amend, modify or terminate any agreement, contract or licence that is material to the business of the Corporation and its Subsidiaries, and in particular, any Offtake Agreements or Credit Arrangements or any similar agreement, contract or licence;

(viii)    amend, modify or terminate the Mining Rights;

(ix)    enter into, amend or terminate any Hedging Arrangements;

(x)    except in the usual, ordinary and regular course of business and consistent with past practice, satisfy any material claims or liabilities (except such as have been reserved against in the Financial Statements), or relinquish any material contractual rights;

(xi)    incur or commit to incur any indebtedness for borrowed money or issue any debt securities, except in the ordinary course of business pursuant to the existing credit facilities of the Corporation and its Subsidiaries and consistent with past practice;

(xii)    commit to any capital expenditures other than as set out in the Disclosure Letter;

- 13 -

(xiii)     change or modify in any way the mining plan or methods at the Nui Phao disclosed to the Offeror;

(xiv)     change or deviate in any material way from the plans outlined in the Technical Report for the Nui Phao Project filed on SEDAR dated September, 2006 and disclosed to the Offeror;

(xv)     grant any participation or earn-in rights in connection with the Mining Rights;

(xvi)     appoint or permit the appointment of a liquidator, receiver or trustee in bankruptcy for the Corporation or its Subsidiaries or in respect of the assets of the Corporation or its Subsidiaries; or

(xvii)     permit the making of an order by a court for the winding-up or dissolution of the Corporation or its Subsidiaries;

(c)     the Corporation shall not, and shall cause each of its Subsidiaries to not take any action other than in the ordinary, regular and usual course of business and consistent with past practice (none of which actions shall be unreasonable or unusual) or as set out in the Disclosure Letter with respect to the entering into or modifying of any employment, severance, collective bargaining or similar agreements, policies or arrangements or with respect to the grant of any bonuses, salary increases, pension benefits, retirement allowances, deferred compensation, severance or termination pay or any other form of compensation or profit sharing or with respect to any increase of benefits payable to directors, officers, employees, consultants or agents of the Corporation or any Subsidiaries otherwise than pursuant to agreements, policies or arrangements in effect (without amendment) on the date hereof and which have been disclosed to the Offeror;

(d)     the Corporation shall use its best efforts to cause its (and its Subsidiaries') current insurance (or re-insurance) policies not to be cancelled or terminated or any of the coverage thereunder to lapse, unless simultaneously with such termination, cancellation or lapse, replacement policies underwritten by insurance and re-insurance companies of nationally recognized standing providing coverage equal to or greater than the coverage under the cancelled, terminated or lapsed policies for substantially similar premiums are in full force and effect;

(e)     the Corporation shall:

(i)     use its best efforts, and shall cause each of its Subsidiaries to use their best efforts, to preserve intact its and its Subsidiaries' respective business organizations, assets, goodwill, mining leases, licences and permits and tax accounts, to keep available the services of its officers and employees as a group and to maintain satisfactory relationships with suppliers, agents, distributors, customers

- 14 -

and others having business relationships with it or its Subsidiaries;

(ii)     not take any action that would result in, or permit, the unrestricted and unencumbered cash balances and short term or money market investments of the Corporation to be less than an aggregate of Thirty Million Dollars in United States currency (US$30,000,000);

(iii)    not take any action, or permit any of its Subsidiaries to take any action, that would render, or that reasonably may be expected to render, any representation or warranty made by it in this Agreement untrue in any material respect at any time prior to the Expiry Time;

(iv)     use its best efforts to enable the conditions set forth in Section 2.3 and Schedule A to be satisfied;

(v)      promptly notify the Offeror orally and in writing of any material change in its or any of its Subsidiaries' businesses, properties, assets, financial condition or prospects and of any material governmental or third party complaints, claims, investigations or hearings (or communications indicating that the same may be contemplated);

(vi)     confer on a regular basis with the Offeror with respect to operational matters and promptly notify the Offeror orally and in writing of any material change in the normal course or operation of its or any of its Subsidiaries' businesses or properties, and of any material governmental or third party complaints, investigations (including any accident or incident investigations by any Governmental Entity) or hearings (or communications indicating that the same may be contemplated);

(vii)    not settle or compromise any claim brought by any present, former or purported holder of any securities of the Corporation in connection with the transactions contemplated by this Agreement or the Offer without the prior written consent of the Offeror;

(viii)   furnish the Offeror with a copy of all information and reports (including financial statements, officer's certificates, operating statements, reports of operations and operating plans) prepared by or on behalf of the Corporation and provided to directors and management of the Corporation after the date hereof;

(ix)     continue to file all documents or information required to be filed by the Corporation under applicable Laws, in accordance

- 15 -

with applicable Laws and all such documents or information, when filed, shall comply as to form in all material respects with the requirements of applicable Laws; and

(x)   make or cooperate as necessary in the preparation of any exemption applications or orders and any other documents deemed reasonably necessary by the Corporation or the Offeror, acting reasonably, to discharge their respective obligations under applicable Laws in connection with the Offer or as required under applicable Laws in order to permit the making or consummation of the Offer.

(f)   the Corporation shall not enter into or modify any contract, agreement, commitment or arrangement with respect to any of the matters set forth in this Section 3.1, other than as contemplated by this Section 3.1, without the prior written consent of the Offeror.

**3.2    Non-Solicitation.**

(a)   The Corporation shall not, shall cause its Subsidiaries not to, and shall ensure that their respective officers, directors, employees, advisers, representatives or agents do not, directly or indirectly:

(i)    solicit, initiate or encourage any Acquisition Proposal;

(ii)   subject to this Section 3.2 and Section 3.3, and except as may be required by applicable Laws, provide any material non-public information to, continue or participate in any discussions or negotiations relating to any such transactions in respect of an Acquisition Proposal;

(iii)  withdraw the Board's recommendation of the Offer or change such recommendation in a manner adverse to the Offeror; or

(iv)   approve or recommend any Acquisition Proposal or enter into any agreement related to any Acquisition Proposal,

provided that, if the provisions of this Section 3.2 are complied with, nothing contained in this Section 3.2 shall prevent the Board from responding to and recommending to the Shareholders a Superior Proposal. Any good faith determination to be made by the Board in connection with an Acquisition Proposal or Superior Proposal shall only be made after consultation with its Advisors and receipt by the Board of a written opinion of outside counsel or advice of outside counsel that is reflected in the minutes of the Board to the effect that the Board is required to consider such Acquisition Proposal or to furnish information concerning the Corporation in connection therewith in order to discharge its fiduciary duties under applicable Laws.

(b)   The Corporation shall immediately cease and cause to be terminated any existing solicitations, encouragements, activities, discussions or negotiations with any parties (other than the Offeror) with respect to any Acquisition

# Exhibit "B"

TORONTO, Dec. 19 /CNW/ - Dragon Capital Management Limited (Dragon Capital) and Tiberon Minerals Ltd. (TBR:TSX) today announced that investment funds managed by Dragon Capital (the Dragon Capital Funds) have agreed, through a subsidiary to be controlled by one of the Dragon Capital Funds, to make an offer to acquire all of the issued and outstanding common shares of Tiberon at a cash price of C$3.65 per common share.

The cash consideration represents a 53 percent premium over the closing share price of Tiberon common shares on October 17, 2006 (the day prior to Tiberon's announcement that its Board of Directors had been approached by a third party with respect to a possible acquisition transaction), and a 52 percent premium over the Company's last equity financing completed in July 2005. Tiberon has approximately 78.3 million common shares outstanding on a fully diluted basis, representing a total equity value of approximately C$286 million (or C$251 million excluding those Tiberon shares already owned by the Dragon Capital Funds). Tiberon's Board of Directors has unanimously determined that the offer is fair and will recommend that Tiberon shareholders accept the offer. In addition, Tiberon's exclusive financial advisor CIBC World Markets Inc. has provided an opinion that the consideration under the offer is fair, from a financial point of view, to Tiberon shareholders. Each senior officer and each member of the Board of Directors of Tiberon has agreed to irrevocably tender their shares to the offer, representing approximately 6.3 million common shares, and to exercise their 2.3 million options (together representing approximately 11 percent of the issued and outstanding common shares calculated on a fully diluted basis).

"The Nui Phao tungsten/fluorspar project is the largest mining project currently under development in Vietnam. Nui Phao is of tremendous strategic importance not only for Vietnam, but because it is the largest producer of these commodities outside China," commented Ian Gowrie-Smith, Tiberon's chairman. "Against this backdrop, Dragon Capital's commitment to Vietnam will ensure the timely development of this world-class deposit and provide a dependable long-term supply of material for Tiberon's offtake partners. I am delighted that the value of Nui Phao has been recognized for Tiberon shareholders."

**A take-over-bid circular containing the terms of the offer will be mailed to Tiberon shareholders, together with a Tiberon Board of Directors' circular and other related**

documents, on or before January 4, 2007. The offer, unless extended, will expire 36 days from commencement of the offer.

The offer will be subject to customary conditions, including acceptance of the offer by Tiberon shareholders owning not less than 66 2/3 percent of Tiberon common shares on a fully-diluted basis, regulatory approvals and there being no material adverse changes with respect to Tiberon. The Dragon Capital Funds currently own 9,585,900 shares of Tiberon, which represents approximately 12.2 percent of the Company's issued and outstanding common shares (calculated on a fully diluted basis). The transaction is expected to close in mid-February 2007.

Tiberon has entered into a pre-acquisition agreement with the Dragon Capital Funds that provides for, among other things, a non-solicitation covenant on the part of Tiberon, a right in favour of the Dragon Capital Funds to match any competing offers, and a non-completion fee payment of US$10 million to be paid by Tiberon under certain circumstances.

Fraser Milner Casgrain LLP is counsel to Tiberon, and Borden Ladner
Gervais LLP is counsel to Dragon Capital.

## Business Edge

*Published: 04/05/2007 - Vol. 3, No. 7*

Toronto-based Tiberon Minerals Ltd. (TSX:TBR) says Walter Henry has resigned as VP of finance and CFO to pursue other opportunities.

Dragon Capital Management Ltd. announced in February that it had more than 93 per cent of the common shares of Tiberon and intended to acquire the remaining publicly held common shares. Tiberon said it expects the CFO duties will be assigned to an employee of Dragon Capital during the transition to a private company.

Tiberon is a Toronto-based exploration and development company.

Page 2

```
Source      MARKET NEWS
Date 02/05/2007
Time  03:13:28 AM

Company     Dragon Capital Corporation
Title Dragon Capital Offer for Common Shares of Tiberon

CDNX Symbol: DGN.P
Press Release
DRAGON CAPITAL CORP ("DGN.P-V")
TIBERON MINERALS LTD ("TBR-T")
- Dragon Capital Offer for Common Shares of Tiberon Minerals
```

In connection with the take-over bid (the "Offer") of TML Acquisition Ltd. (the "Offeror") to acquire all of the issued and outstanding common shares (the "Shares") of Tiberon Minerals Ltd. ("Tiberon"), the Offeror has announced that Vietnam Enterprise Investments Limited ("VEIL"), an investment fund managed by Dragon Capital Management Limited ("DCML"), acquired through the facilities of the Toronto Stock Exchange (the "TSX") an aggregate of 211,700 Shares of Tiberon. During the Offer, the Offeror and VEIL have purchased an aggregate of 759,800 Shares of Tiberon on the TSX at an average price of $3.59 per Share. The highest price per Share of Tiberon paid today was $3.62. VEIL, Vietnam Growth Fund Limited and Vietnam Dragon Fund Limited (each an investment fund managed by DCML), together with the Offeror, exercise control or discretion over, beneficially own or are deemed to beneficially own, in the aggregate, 16,601,870 Shares of Tiberon, which represent approximately 21.9% of the issued and outstanding Shares of Tiberon.

```
TEL:  011 84 8 823 9355  Dragon Capital Management Limited
FAX:  011 84 8 823 9366
Internet: www.dragoncapital.com
```

## WEEK OF DEC 22ND 2006

**Investment bank Dragon Capital Management has offered to buy Tiberon Minerals for C$251 million. Tiberon needs cash to develop its Nui Phao fluorspar-tungsten mine in Vietnam and given that Dragon Capital already owned about 9.5 million, or 12.2%, of Tiberon's 78.3 million shares, the move makes sense. The offer is C$3.65 per share and Tiberon's management has already agreed to tender all of their shares and to exercise all of their warrants, giving Dragon Capital 23% of the company already. Investors had already priced in the action as Tiberon ended the week with a modest C$0.06 gain to close at C$3.**

**Dragon Capital Corporation recently reported that shareholders have approved the company's change of name to Arehada Mining Limited to reflect the firm's origins. Arehada Mining Corporation, its 100% subsidiary based in Inner Mongolia, China has 550 full time employees in the mining and processing division, 213 employees in the zinc plant and 12 employees in the exploration division.**

The Company is currently operating a 1,500 tonnes per day mining and milling operation producing zinc and lead concentrate which generated earnings of $0.015 per share in that period.

The Company has indicated and inferred resources of 11 million tonnes with an average grade of 3.08% zinc, 2.07% lead and 57 g/t of silver supporting a 14.5 year mine life from the currently producing Arehada North deposit.

The Company currently has six drills working to the east of the defined resource seeking to prove sufficient additional resource to support expansion of the mining and milling operation in Arehada North.

Construction of a new incline shaft and a vertical shaft has commenced with a view to doubling the capacity to 3,000 tonnes per day by the end of 2008.