# EXHIBIT A

**Trevor A. Moss**
3645 Crown Hill Dr. Santa Rosa, CA 95404-7659

Thursday, 25 January 2007

**Tiberon Minerals Ltd.**
100 Yonge Street, Suite 1101
Toronto ONT M5C 2W1
Canada

Attention:     Mr. Mario Caron – President and Chief Executive Officer

Subject:     Outstanding Bonus Due on Consulting Agreement

Dear Mario:

I have received your letter of 24th January 2007. I can only surmise that you must be very busy at the moment with the acquisition by Dragon Capital, and do not have sufficient time to properly address the topic of this letter.

Within your recent letter you make several incorrect statements as described below.

### ESIA

The extent of deficiencies in the 2005 ESIA were certainly not known at the commencement of 2006 as you claim. As you are fully aware, Knight Piésold and Co of Denver completed the document after taking over the responsibility from their sister office in Vancouver. Indeed Knight Piésold of Denver, experts in the field of international ESIA development and involved in the document upgrade at the commencement of 2006, only became aware of the total extent of the deficiencies later during the course of completion of the document. Moreover, the stated 2006 objective related only to completion of the upgrade of said document and its issue for financing. No commitment was made to include any time necessary for reviews or postings by any external parties.

### Project Control Estimate and Completion Schedule

The 3rd June 2006 estimate was complete and followed the scope of the project defined in the Feasibility Study and fulfilled the 2006 objective. You are correct that I expressed concern about the magnitude of the cost proposed and that you were not apprised of the full value of the 3rd June 2006 estimate at its completion. This latter being partly due to your expressly stated wish to not be so advised as it may result in disclosure issues for the Company. However, as you were made aware, this initial estimate was greatly in excess of the prior, exceeded expectations, and resulted in a significant negative impact to the economic viability of the Project. It was only prudent, therefore, to seek ways to reduce cost and improve project feasibility and hence, with your full knowledge and support, a value engineering exercise was undertaken to reduce cost and improve project economics. The resulting capital cost was discussed with you in detail on the 24th of July 2006 in the Ausenco office in Brisbane Australia.

I did not indicate that the final (as presented on 9 August 2006) cost estimate as released by Ausenco was "too high" as you claim. At the 9 August 2006 Board presentation I did comment on the high proportional value of the estimate of EPCM services as proposed by Ausenco, but also confirmed that many avenues had been explored to reduce such cost but that these had been exhausted.

phone:     +1 925 577 1078
fax:     +1 707 581 7314
e-mail:     trevor.moss@teamoss.us

## Trevor A. Moss

### EPCM Contract

Once again you are incorrect in your statement. At no time did I either recommend that the EPCM contract be cancelled or that it be replaced by other contracts. I merely proposed that the short term services of Ausenco continue on a reduced remit to cover just EP services in an effort to minimise short term costs in light of the delays to the schedule caused by the uncertain resettlement progress and then implement CM activities once such activities could commence with confidence and cost efficiency. This approach was designed to minimise expenditures and conserve precious Company capital. My recommendation did not propose revision of the contract in any way as any of the proposed revisions could have been readily accommodated within the January 2006 contract as they were already covered in the inherent terms agreed.

During my visit to Ausenco after the Board meeting I did not apprise Ausenco management of any decision to cancel the contract but simply proposed that services continue on an EP basis. Such an approach was reviewed also with Company representatives located in the Ausenco office. No specific action was taken at that time.

### Other Objectives:

To summarily dismiss my other rebuttal on the other objectives is both unreasonable and unacceptable.

I sincerely hope that we can conclude this final aspect of my Agreement without animosity and look forward to a more appropriate reply in due course.

Yours sincerely,

Trevor A. Moss